WILLIAM J. STONE *vs.* LOUIS A. EVANS.

June 30, 1884.

**Action by Husband for Injuries to Wife — Loss of Services — Malpractice of Physician.**—In an action by a husband for damages resulting to himself from injuries to his wife caused by the malpractice of a physician, damages for loss of service which appears necessarily to result from the nature of the injury, may be recovered as part of the general damages without being specially pleaded.

**Same—Damages for Mental Anxiety—Evidence as to Amount.**—Damages for the mental anxiety or the injured feelings of a husband, father, or master, if recoverable at all in such cases, are to be allowed by the jury as matter of aggravation, upon consideration of the facts and circumstances of the case, and not upon the statements of witnesses as to the amount of such damages.

**Practice—Admission of Deposition — Harmless Error.**—Where it appeared, upon the introduction in evidence of a deposition, that the cross-interrogatories annexed to the commission had not been answered, but it clearly appeared that the material facts testified to in chief by the witness were already conclusively established, or were not disputed on the trial, *held,* that the reception of the deposition, under the circumstances, was error without prejudice.

Plaintiff brought this action in the district court for Stearns county, to recover the value of his services as a physician, rendered in attendance upon defendant's wife. The answer denied the value of the services, and pleaded a counterclaim for damages arising from plaintiff's malpractice and negligence. The action was tried before *Collins*, J., and a jury, and plaintiff had a verdict. Defendant appeals from an order refusing a new trial.

Plaintiff in rebuttal, after the defendant rested, introduced in evidence the depositions of a large number of witnesses, taken in Chicago, Illinois, including those of witnesses Andrews, Van Tuyl, Lyman, and Sargent, mentioned in the opinion, the witnesses testifying as experts. Defendant objected to the reception of these depositions, upon the grounds (1) that it appeared that several names had been written in and added to the stipulation since it was entered into; (2) that one of the depositions had been altered upon the face of it; and (3) that the contents of the depositions are not in rebuttal, the substance of them being as to what is the proper treatment.

G. S. Spencer, the proprietor of the drug store where the prescription involved in this case was prepared, testified on behalf of defendant as to a card prepared for publication by plaintiff in regard to the matter. In rebuttal of this testimony, the plaintiff called Charles Mitchell, publisher of a newspaper, who testified as to the contents of this card. S. R. McMasters, a druggist residing in St. Paul, testified for the plaintiff, in rebuttal, as to the meaning of the prescription alleged to have been ordered, and as to how it would ordinarily be prepared.

*Taylor & Taylor* and *John W. Willis*, for appellant.

*Searle, Searle & Tolman*, for respondent.

VANDERBURGH, J.[1]  1. The material question of fact, litigated and submitted to the jury in this case, was whether a mistake in the preparation of a physician's prescription was the fault or mistake of the plaintiff who ordered it, or the druggist's clerk who prepared it; that is to say, whether the plaintiff did, as he insists, order the clerk to put in a bottle, furnished by plaintiff, "a two-grain solution of sul-

[1] Dickinson, J., because of illness, took no part in this decision.

phate of atropia," a poisonous and dangerous drug, or whether, as the clerk clearly testifies, "he [plaintiff] took a small phial out of his hyperdermic case, and told me to put up two grains of sulphate of atropia," and which he understood to be two grains to the drachm. The clerk thereupon actually put up two grains of atropia in a drachm phial, and as thus prepared it was administered to defendant's wife by the plaintiff, with highly injurious results. As established by the evidence in the case, in a preparation or mixture of this kind an ounce of water is understood to be the standard solvent; and if a solution of atropia was ordered, it would mean, as understood among experts, so many grains (whether two or more were indicated) to the fluid ounce. This issue the verdict settled in plaintiff's favor, and it cannot be disturbed for lack of evidence, especially after the refusal of the trial court to set it aside.

2. As to defendant's damages under his counterclaim, it was competent for him to show the facts in reference to the treatment of his wife, and her consequent physical condition, as alleged. The loss of service necessarily resulting therefrom would entitle him to some damages, and the jury might, as in other cases of tort, under his allegation and claim of general damages, allow such damages therefor as would be appropriate to the nature of the case as disclosed by the evidence. Cooley on Torts, 226. Any special injury or damages, whether resulting to him from loss of service or other cause, would have to be pleaded.

The record, however, discloses no substantial error on this point. The defendant had testified that, "after the poisoning, it was two or three weeks before there was any apparent convalescence. It was two or three weeks before she got out of bed. I think it was ten weeks before she was able to resume her household duties. I think she was confined to her bed eight or nine weeks. * * * During my wife's sickness I was deprived of her society; also her assistance. She was in bed all the while from eight to ten weeks." Thereupon his counsel asked him: "During that time was she able to take care of family matters?" This was ruled out by the court, but, as the question called for nothing which was not already included in the testimony just given by the witness, the error was certainly harmless.

The further question, to wit, "What damage did you sustain in consequence of your own privation, anxiety, etc., on account of the poisoning of your wife?" was also properly rejected.    Whether the husband would be entitled to recover damages for his own mental anxiety and distress, growing out of his relationship and sympathy in this class of cases, we need not determine, though we think the doctrine is not favored.    Shear. & Red. on Negligence, (3d Ed.) § 608a; Hyatt v. Adams, 16 Mich. 180.    The sum or amount of such damages could not be specially proved by the witness in this way.    It would be for the jury to consider as matter of aggravation, in their estimate of the damages, under the circumstances of the case.    The question, as asked, was properly overruled.

3. In reference to the depositions introduced in evidence, it was objected that the names of the witnesses Andrews, Van Tuyl, and Lyman were not properly included in the stipulation under which the evidence was taken; but there is nothing upon the record to show that the ruling of the court upon the question, whether these names were properly inserted upon defendant's consent, was not correct. Error must be made to appear.

4. In the deposition of the witness Sargent, no answers to the cross-interrogatories of defendant appear, and they seem not to have been put to the witness. This was error. But the record shows that no prejudice could have resulted therefrom. The evidence in chief of this witness could not have affected the result.    The facts testified to by him were not seriously questioned on the trial.    The materiality of only one question need be considered, viz.: "If a drachm phial were sent, and a two-grain solution of sulphate of atropia ordered, what should be understood by it, and how much atropine put into the phial?"    Answer. "I would understand that he wanted a solution of two grains to the ounce of solvent, and put one-fourth of a grain into such phial." There does not appear to be any substantial dispute upon this question.    The druggist's clerk distinctly testified: "Had he called for a two-grain solution I would have given it to him.    I should give him two grains of atropia in an ounce of water."

5. The plaintiff testified, without objection, to statements and admissions made to him by defendant's wife in reference to his account.

Defendant afterwards moved to strike out this evidence, which was refused. No reason appears why it might not have been seasonably objected to. It is well settled that the refusal of the court to strike out evidence, under such circumstances, is in the discretion of the court. *Wilson* v. *N. P. R. Co.*, 26 Minn. 278; *State* v. *Johnson*, 23 Minn. 569.

The evidence of the witness Mitchell was, we think, properly received in rebuttal of the witness Spencer, who testified for defendant; and the evidence of the witness McMasters was material and proper, and the order of proof was in the discretion of the court, which was not exercised to the prejudice of defendant in the reception of his testimony.

Order affirmed.