STATE OF MINNESOTA *vs.* AUGUST PLYM.

June 2, 1890.

**Bigamy—Evidence—Defendant's Admissions.**—On a trial for bigamy, the fact that the defendant, when expostulated with in regard to his second marriage, at or about the time of its occurrence, on the ground that his former wife was still living, was silent and did not deny the fact, is competent evidence against him as being in the nature of an admission.

**Same—Nature of Presumption of Continuance of Life.**—The presumption that a person is still living, arising from the fact that he was alive at a former date, is one not of law but of fact, of varying strength, according to circumstances.   The fact that he was alive at a particular time is but one of the facts to be considered in determining whether he was alive at a given future date, the probative force of which will depend upon accompanying circumstances, such as the length of intervening time, the age and health of the person, or any other facts affecting the probability of the continuance of his life.

**Same—Weight of such Presumption.**—Its weight as evidence is a question for the jury, to be determined by the general presumption or probability of the continuance of the life, in view of all the circumstances of the case.   It may be sufficient to warrant them in finding that the person was still alive at a given future date, although there is no direct evidence of the fact.

Appeal by defendant from an order of the district court for Ramsey county, *Brill*, J., presiding, refusing a new trial.

*Williams & Schoonmaker*, for appellant.

*Moses E. Clapp*, Attorney General, and *James J. Egan*, for the State.

MITCHELL, J.[1]   The defendant was indicted, tried, and convicted of the crime of bigamy.   The case comes here on a bill of exceptions which does not purport to contain all the evidence.   The rulings of court in admitting certain evidence, and in certain parts of its charge to the jury, are here assigned as error.   The state introduced evidence sufficient to prove the defendant's first marriage, in Sweden,

[1]Vanderburgh, J., was absent and took no part in this case.

in July, 1876, and his second marriage, in St. Paul, on the 10th of January, 1889. The uncontroverted evidence was that the defendant left Sweden and came to the United States in April, 1884, leaving his first wife, then living, and her children, in Sweden; also, that when a sister of defendant left Sweden on the 29th of August, 1887, to come to St. Paul, where her brother lived, the first wife was still living in Sweden, and sent by her a letter and message to her husband, to the effect that she wanted to come over to him, and that when this message was communicated to him, he said that "he would take her over after a while." The evidence the reception of which is assigned as error was the testimony of his brother and sister, to the effect that immediately before and after his second marriage they expostulated with him in regard to it, saying that it was not right to get married when he had a wife and children in Sweden, etc., and that he did not make any answer, except to say that it was his own business, and was nothing to them, and that they need not bother themselves about it. This evidence was competent. His silence, in the face of a charge that his wife was still living, was in the nature of an admission of the fact,—certainly of the fact that he supposed she was living.

The charge of the court assigned as error was as follows: "There is a presumption that a person living at a certain time continues to live until the contrary appears; that is, when the life is once shown, it is presumed to continue until it shown to have ended. That presumption may be stronger or weaker according to the circumstances of any particular case. It is not a conclusive presumption, but it is a presumption which the jury is warranted in drawing from the fact of life being shown that life continues until it otherwise appears." The court, however, explicitly charged the jury that the defendant was presumed to be innocent until his guilt was established beyond reasonable doubt, and that his guilt, and *all the facts necessary to convict him of the crime,* must be established beyond a reasonable doubt; and that among the facts of which the jury must be convinced beyond reasonable doubt, in order to convict, was the fact *that his first wife was living at the time of his second marriage.* The jury were also instructed that they were to take all the circumstances into consideration in determin-

ing the case, and that they were the judges of the facts. Taken as a whole, we find no error in this statement of the law. There is some confusion, if not conflict, of views in the decisions in cases of conflicting presumptions of the continuance of life and of innocence, as to which shall prevail. Some hold that what is called the presumption of the continuance of life must yield to the stronger presumption of innocence; and therefore, in prosecutions for bigamy, the fact that the former husband or wife was living at some particular date before the second marriage will not warrant a conviction; that there must be some direct evidence that he or she was still living at the date of the second marriage. Reduced to its logical result, the effect of this would be that, if it was proved by the most indisputable evidence that the former husband or wife was alive and in good health a few hours before the second marriage, the jury could not presume that death had not intervened, without some direct evidence to the contrary. The unreasonableness of this as a practical rule of evidence would seem almost self-evident. Other cases, apparently upon the idea that the presumption of the continuance of life is one of law, seem to imply, if not hold, that if the life is proved still to exist at any time within the statutory period of seven years, it must, as a matter of law, be presumed still to continue until there is some direct evidence tending to prove that it has terminated.

It seems to us that neither of these views is correct. The statutory presumption, in certain cases, of death after seven years affords no ground for the converse proposition that, if the person has been heard from within seven years, there is a presumption of law that he is still living. Neither is it true that there is any presumption of *law* one way or the other as to the continuance of life. It is a mere presumption of fact, which is subject to be controlled by facts and circumstances, and consequently by no means of equal strength at all times, and under all circumstances; or, perhaps, more correctly speaking, there is no rigid presumption one way or the other. The evidence that a person was living at a particular time is but one of the facts to be considered in determining the question whether he was living at any future given time, and which is to be considered with

reference to accompanying circumstances, such as the length of time intervening, the age and health of the person, and the like.   Its weight as evidence will be affected by any circumstances affecting the probability of the continuance of the life, or rendering it probable that death had occurred.   If the lapse of time was comparatively short, it would, in ordinary cases, in the absence of any evidence to the contrary, be usually deemed satisfactory.   But the question whether a person was alive at a certain time, whether a day, a month, a year, or any other period less than seven years after direct evidence of his being alive, is a question of fact for the jury, to be determined by the general presumption—or probability, if the latter term is preferred—of the continuance of human life in view of all the circumstances of the particular case.

It is usual to say, as did the trial judge in this case, that if a person is proved to have been alive at a given time, less than seven years before, there is a presumption, more or less strong according to circumstances, that he is still living, unless the contrary appears. This is but another way of saying, what would perhaps be a more precise statement of the proposition, that it is a fact from which the existence of the other fact may be inferred or deemed proved.   This is, we think, in effect what the court's charge, when considered as a whole, amounted to.   As the record does not purport to contain all the evidence, we do not know what, if any, facts or circumstances were shown bearing upon the probability of the continuance of the life of the former wife, or indeed whether or not there was any direct evidence that she was living at the date of the second marriage.

It follows from what has been said that defendant's third request to charge was properly refused, and that it does not appear that there was any error in refusing the second.   The first was fully covered by the general charge.

Order affirmed.