# HATTIE E. PIERSON v. MODERN WOODMEN OF AMERICA.[1]

March 6, 1914.

Nos. 18,518—(297).

**Evidence — by-law.**

1. In an action by the beneficiary named in a membership certificate, issued by a fraternal insurance company, to recover the amount payable upon the death of the member, the court rightly excluded a purported by-law pleaded in abatement, because the printed copy offered in evidence was not properly authenticated, and also because there was no offer to prove that the by-law was in force at a time when it could be material to the issues involved.

**Absence for seven years — verdict sustained by evidence.**

2. The evidence of the disappearance of the insured, of his continued absence for more than seven years, and of the inquiry and search for him was such that it sustains the finding of the jury that he was dead.

**Refusal to charge jury.**

3. No error was made in refusing to give certain instructions requested by defendant, for, in so far as such instructions embodied sound rules of law applicable to the issues litigated, they were fully covered by the general charge.

Action in the district court for Ramsey county to recover $2,000 upon defendant's benefit certificate upon the life of Frank Pierson in favor of his wife, the plaintiff. The complaint alleged that the insured left home in January, 1905, and had not been heard from since plaintiff received a letter from Sacramento, California, written in April of the same year, stating that he was ill. The answer denied that the insured was dead, and alleged that he was alive and defendant owed plaintiff no sum whatever. The answer further set out the terms of section 66 of defendant's by-laws, as stated in

---

[1] Reported in 145 N. W. 806.

Note.—Upon the necessity of inquiry to raise presumption of death from seven years' absence, see notes in 2 L.R.A.(N.S.) 809 and 28 L.R.A.(N.S.) 178.

the opinion. The case was tried before Brill, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict in favor of plaintiff for the amount demanded. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*Benjamin D. Smith* and *Percy D. Godfrey,* for appellant.
*Durment, Moore & Oppenheimer,* for respondent.

HOLT, J.
In July, 1892, defendant, a fraternal insurance company, issued to Frank Pierson a membership certificate entitling his wife, the plaintiff herein, to $2,000 upon the occurrence of his death. In May, 1905, the insured disappeared. Plaintiff continued to pay dues and assessments as called for by the certificate and by-laws of defendant until July, 1912, when she brought this action for the $2,000, alleging that Pierson was dead and setting out the facts in regard to his disappearance. The answer averred that Pierson was alive and also that the action was prematurely brought because a by-law of defendant, known as section 66, provides that continued absence or disappearance shall not be regarded as evidence of death or give any right to recover on the membership certificate until the expiration of the full term of the member's expectancy of life according to certain mortality tables. The reply denied the existence of the by-law, and further alleged that if such by-law did exist it did not go into operation until 1908. Plaintiff recovered; and defendant appeals from the order denying it a new trial.

The errors assigned relate to the action of the court in excluding a printed copy of defendant's purported by-laws when offered in evidence; the insufficiency of the evidence to support the verdict; and to the refusal of the court to give certain requested instructions.

Plaintiff contends that no error was made in sustaining the objection to the offer in evidence of the by-law, section 66, pleaded in abatement of the action, for the reason that such by-law is invalid. It is claimed that it is not reasonable under such decisions as Thibert v. Supreme Lodge, Knights of Honor, 78 Minn. 448, 81 N. W.

220, 47 L.R.A. 136, 79 Am. St. 412; Tebo v. Supreme Council of Royal Arcanum, 89 Minn. 3, 93 N. W. 513; Olson v. Court of Honor, 100 Minn. 117, 110 N. W. 374, 8 L.R.A.(N.S.) 521, 117 Am. St. 676, 10 Ann. Cas. 622; and Samberg v. Modern Maccabees, 158 Mich. 568, 123 N. W. 25, 133 Am. St. 396, a case very much in point. But it is unnecessary to decide this question for, by the very terms of the by-laws offered, it appeared that they were not properly attested so as to be admissible in evidence. One section thereof provides: "Any printed copy of the by-laws of this society, duly certified under the seal thereof, by the head clerk, shall be admissible in evidence in any case or proceeding between any member of the society, his beneficiary, or beneficiaries, and the society." No seal was attached to the printed copy offered. Nor did counsel at the trial claim that this by-law, section 66, existed when Pierson disappeared, and he does not so contend in this court. There was no foundation for the proffered proof, nor was its materiality disclosed.

The evidence warranted a finding that Frank Pierson was dead. In January, 1905, he was living in St. Paul with his wife and two children. His domestic relations were pleasant. And, though he does not appear to have accumulated property, he was not then burdened with any debts. He had been employed for some time as a cattle salesman at South St. Paul, and also took shipments of cattle from there to Iowa for sale on commission, or for a share of the profits. In January, 1905, he started out with such a shipment. After some delay he reported sales and forwarded a draft for $1,700 to the owners. Then all trace of him was lost until some time in March, when plaintiff received a letter from him stating that he was in California, ill and without means. Between that time and some time in May, 1905, some three or four other letters from him were received by his wife. Only two were preserved and are in evidence, but plaintiff testified that the contents of those lost were of the same general tenor, disclosing a great desire to be back with his family, but that he was without means and ill. And from the two letters mentioned the inference is that he was not mentally well. Plaintiff was without means, but she raised some money and sent

him. She also wrote to a distant relative, now dead, who was living in California to go to him, but it appears that Pierson had then left San Francisco for Sacramento. She wrote to the postmaster at the last place to which letters to him had been by his direction forwarded, and the postmaster inserted an advertisement for him in the local paper, but without results. She also sent her son down into Iowa to obtain some trace of him from the places where he had been disposing of the cattle. She had no relatives; and his only relative, beside his wife and children, were his parents, living in Iowa. They both testified to having heard nothing from him since his disappearance, and that previous thereto he frequently visited them. It further appears that he did not account to the owners of the last cattle shipment he took out for all of the proceeds, but the evidence does not show that there was any desire on their part to prosecute Pierson criminally, or that there was legal ground for so doing. To show motive for absence of Pierson, and to overcome the presumption of death from the long-continued absence, defendant brought out this shortage arising from the cattle shipment and also adduced the testimony of one Mosher, who had worked for several years at the stock yards in South St. Paul when Mr. Pierson was also employed there, to the effect that he met Pierson in a barber shop at Long Beach, California, in 1910. Mosher stated that the man he thought was Pierson refused to admit acquaintanceship when spoken to and told Mosher he was accosting the wrong man. Mosher also claimed that he went to the hotel where this man was stopping and found that he had registered as Jose Romero and wife, Escanada, Mexico; and that afterwards he saw him with a richly dressed lady leave in a boat bound for San Diego. But Mosher frankly states that he was not certain that the man was Pierson. In his direct examination this occurs: "After you saw him get up, did you recognize him as Frank Pierson? Well, he had his mustache shaved off, but I thought at the time it was Pierson. Don't you think so yet? Well, yes, of course I think it was him, but I am not positive it was him. It might have been someone else." Mosher's identification of the man he saw as Frank Pierson was rendered more uncertain from his cross-examination. Shortly before starting this

action plaintiff's attorney learned of this incident and at once gave the information gained to defendant's attorney, but the trial disclosed no successful effort to verify the clue furnished by Mosher either on the part of plaintiff or defendant.

It is insisted that the evidence fails to show a diligent search for Pierson at every place where it might be possible to obtain some information. It was for the jury to say whether plaintiff's efforts in that direction were all that could reasonably be expected from one circumstanced as she was. What dependence could rightfully be placed in Mosher's uncertain belief that Pierson was alive in 1910, and how far plaintiff, on learning of the incident two years later, was then to follow a possible clue in order to comply with the requirement of diligent inquiry was also for the jury. The same may be said in respect to the existence of any motive which might have caused Pierson to let his aged parents, devoted wife and children mourn him as dead these many years. This is not a case where a person leaves to establish a new home and, when last heard from, is in good health and on the move; on the contrary Pierson was ill in body and mind, and apparently imbued with a strong desire to return home as soon as possible.

We shall not discuss any error assigned upon the refusal to give certain requested instructions to the jury, because in so far as these embodied correct legal principles applicable to the facts they were fully covered by the clear and comprehensive instructions of the learned trial court, given practically in the words of the charge approved in Behlmer v. Grand Lodge, A. O. U. W. 109 Minn. 305, 123 N. W. 1071, 26 L.R.A.(N.S.) 305. The jury were told that if Frank Pierson was seen alive in 1910, or at any time within the period of seven years before the commencement of the action, the verdict must be for defendant. The court also said with reference to a search: "The circumstances may be such that the presumption of death could not apply or ought not to be applied without a reasonable search and inquiry, in addition to the failure to receive further communications, and if search or inquiry is required, it must be reasonable search or inquiry under the circumstances, and it is for you to say what the fact is in this regard; and the ultimate question

for you to determine in this case: Is the husband of the plaintiff, named in this beneficiary certificate, dead; does the evidence establish to your satisfaction that he is dead?"

We find no error in the record. The facts are not at all similar to those appearing in Spahr v. Mutual Life Ins. Co. 98 Minn. 471, 108 N. W. 4, relied on by defendant, but quite like those found in Behlmer v. Grand Lodge, A. O. U. W. supra. Nor do we find that the principles enunciated in the cases of Modern Woodmen of America v. Gerdom, 72 Kan. 391, 82 Pac. 1100, 2 L.R.A.(N.S.) 809, or Winter v. Supreme Knights of Pythias, 96 Mo. App. 1, 69 S. W. 662, or in any other case cited by appellant are at all in conflict with our own decisions mentioned, or the theory upon which the case at bar was submitted to the jury.

Order affirmed.