# NATHALIA SWANSON v. MODERN BROTHERHOOD OF AMERICA.[1]

## January 5, 1917.

### Nos. 20,038—(181).

**Benefit certificate — disappearance of insured — presumption of death.**

1. The evidence was such that the jury could properly apply the presumption of death of plaintiff's husband from his complete disappearance and continued absence from home for more than seven years next prior to the commencement of this action upon the benefit certificate, issued to him by defendant and payable to plaintiff upon his death.

**Trial — no error.**

2. No error upon which to base a reversal occurred at the trial.

Action in the district court for St. Louis county to recover $3,000 upon defendant's benefit certificate upon the life of John Swanson. The answer denied that the insured was dead. The case was tried before Hughes, J., and a jury which returned a verdict in favor of plaintiff for the amount demanded. Defendant's motion for judgment notwithstanding the verdict or for a new trial was denied. From the judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*Archer & Pickering* and *Sam Sparrow,* for appellant.

*Daniel D. Morgan,* for respondent.

HOLT, J.

The main question in this appeal is whether the proof sustains the verdict to the effect that plaintiff's husband, the holder of a beneficiary certificate issued by defendant, a fraternal insurance association, is dead so that plaintiff, the beneficiary named in the certificate, is en-

[1]Reported in 160 N. W. 779.

Note.—On presumption as to time of death of one presumed to be dead after seven years absence, unheard of, see notes in 26 L.R.A.(N.S.) 294. L.R.A. 1915B, 729.

titled to receive from defendant the sum it agreed to pay her upon his death.

The evidence justified the jury in arriving at these conclusions: That plaintiff, a widow with two children, married John Swanson in Sweden about 1889; and soon thereafter they came to this country. Some years prior to 1900 the family moved to Brainerd, Minnesota, and remained there for about 17 years. While living there, and in 1900, John Swanson became a member of a subordinate lodge of defendant, and received the certificate in suit upon which all dues and assessments have been kept up until this action was begun. Swanson's work in this state was confined to logging and lumbering, working as a grader and scaler in a sawmill crew in the summer and in the woods in the winter. On May 29, 1904, he came home from his work in the evening as usual and ate supper with his family. After supper plaintiff went to the grocery store. John Swanson put on his good clothes, took his satchel, kissed the children goodbye, telling them he was going away, but he had said nothing to his wife of his purpose. The family has never heard from him since. At the time he left, only the two step-children were earning something to help along, one of them being away from home. Of Swanson's own children, six in number, the oldest was 14 years and going to school, so did the others of school age. His wages were $1.75 to $1.80 per day, and were not sufficient for support. So Mrs. Swanson, to help out, kept boarders at times. Some aid was obtained from the milk sold from two cows which they owned, and which Mrs. Swanson and the children took care of. Mr. Swanson occasionally used intoxicating liquors, but not to excess. He was a good worker and almost continuously employed. The jury could find that his family life was happy; that he was devoted not only to his own but also to his step-children, treating all kindly and affectionately; that whilst poor there was no financial stress; and that there was nothing to indicate discontent on the part of Swanson with his lot or with his work, home or family. Finding the circumstances as above outlined, the jury might properly conclude that he was dead, otherwise he would have returned to his home.

It is contended that plaintiff's proof fails to show proper efforts on her part to find her husband or to ascertain his fate. The proposition

was no doubt pressed upon the attention of the jury who could well take this view of the situation: Mrs. Swanson made no immediate search, because she had no reason to believe that he would stay away longer than the occasion which called him from home required. She had no inkling whither he had gone. She had no relatives, neither did she know of any of her husband's here or in Sweden. Without means and with this large family of small children depending upon her for support, no possibility for search was open to her. Waiting and hoping seemed her only course. No more should be required of her in the way of search than could reasonably be expected of one circumstanced as she was. It is also claimed that the evidence does not show that Swanson, when he left, harbored the intention of ever returning. We think the inference of his intention on the subject was for the jury.

Although plaintiff did not notify defendant of her husband's disappearance until shortly before suit, undoubtedly the officers and members of the local lodge knew thereof. Since this action was started defendant appears to have taken very active steps to ascertain where Swanson was, if among the living, but so far without success. A new trial was, sought on newly-discovered evidence; and, considering the moving affidavits alone, they appear so persuasive that a person going under the name of Gust Hoaglund was plaintiff's husband, that a new trial would seem unavoidable. But Gust Hoaglund was brought before the court upon the hearing of the motion, and gave oral testimony which we think conclusively establishes that he was not the John Swanson who married plaintiff and to whom defendant issued the membership certificate in suit. There is some testimony going to show that the John Swanson in question was seen alive within seven years of the commencement of the action. Some of it is very uncertain as to time, and the rest is such that the jury were justified in attaching little weight thereto. Nearly every one has had experiences proving that one person is often mistaken for another. The conclusion of the jury that John Swanson, plaintiff's husband, has not been seen alive within seven years next preceding the commencement of this action, cannot be disturbed.

It is true, Mrs. Swanson's testimony as to occurrences since leaving Sweden appears candid and reasonable, but quite the reverse as to events prior thereto. One can hardly believe that she could forget the

name of the place of her birth or residence in Sweden, and the place of her marriage or the parson who performed the ceremony. But, after all, it was for the jury to pass upon her credibility; and, as to the facts upon which hinge the conclusion that Mr. Swanson is dead and has not been seen alive within the period which gives rise to the presumption of death, there was abundant evidence outside of plaintiff's testimony.

The rules of law applicable to cases of this kind are well settled and need not be here restated, or authorities cited. The trial conformed to these rules, and all evidence offered tending to show that John Swanson had been seen alive less than seven years prior to the institution of this action was properly received, but, as stated, it was of such character that the jury could well find that the person seen was not plaintiff's husband, or that the witness was mistaken as to time. In a clear concise charge to which no objection was, or could be, raised the issues were submitted to the jury. No good reason is found for disturbing the verdict. The point that proofs of death were not served within a reasonable time after his disappearance is not available, for no proper exception was taken at the trial or on the motion for a new trial to the ruling. And even if there had been, we fail to appreciate any merit therein. The appeal for a new trial upon the ground of newly discovered evidence failed utterly.

The judgment should be and is affirmed.