MILTON M. HUBER v. CITY OF BLUE EARTH.[1]

November 27, 1942.

No. 33,272.

[1]Reported in 6 N. W. (2d) 471.

*Eldon J. Spencer* and *Frundt & Morse,* for appellant.
*Carlson & Carlsen* and *Stanley V. Kinyon,* for respondent.

LORING, JUSTICE.

This is an action for damages for polluting the waters of the Blue Earth River. The plaintiff is a farmer owning, operating, and residing upon a dairy farm about ten miles downstream from defendant city, which drains its sewage into the branches of the Blue Earth River which unite just north of the city. Plaintiff had a verdict, and the city appeals from an order denying its motion for judgment or a new trial.

The city drains its sewage into the two branches of the river through three outlets without the use of any purification works whatever. A canning factory operates from June to September within the city limits and drains the effluent from its operations into one of the city's sewers, using about 700 gallons of water per minute to conduct its washing operations. Up to about the tenth of August of each year, the factory is engaged in canning peas and, from that time until mid-September, in canning corn. The operation of canning corn results in considerable refuse, which the company causes to be piled on its premises. The drainage from this refuse, amounting to six or seven gallons per minute, flows

out to the river through a tile drain installed by the company.

There is abundant evidence in the record that, in consequence of the drainage into the stream of the raw sanitary sewage and effluent from the canning factory, a nuisance is created by pollution of the stream as it passes through plaintiff's premises.

The principal defense of the city is that some two or three years after the canning factory was established the city enacted an ordinance the effect of which was to forbid the drainage into the sewers of effluent such as is discharged from the factory. No effort was made by the city to enforce this ordinance, and the factory continued to use the sewers for an outlet, except in the case of the drainage from its pile of corn refuse.

■ We are not impressed with the defense that the city is relieved from responsibility for the effluent from the canning factory because of the ordinance forbidding its disposition through the sewer. Neither counsel has found a case directly in point on this question, but the liability of cities for pollution of water by sewage is too well established to require extensive citation of authorities. Joyce v. Village of Janesville, 132 Minn. 121, 155 N. W. 1067, L. R. A. 1916D, 426; Johnson v. City of Fairmont, 188 Minn. 451, 247 N. W. 572; Shuster v. City of Chisholm, 203 Minn. 518, 282 N. W. 135. That a city passes such an ordinance as is here involved does not logically exempt it from liability. Such an ordinance merely enables the city, if so disposed, to protect itself from liability by preventing the pollution of streams which carry away its sewage. The ordinance has no effect on the rights of persons suffering from its violation. No better illustration could be had of the futility of such an unenforced ordinance to protect streams than the case at bar. The ordinance was passed after the erection of the canning factory, but no effort whatever was ever made to enforce it although the city government was well aware that the canning factory was violating it. The inferences to be drawn from that sort of conduct are obvious. Hines v. City of Nevada, 150 Iowa, 620, 130 N. W. 181, 32 L.R.A.(N.S.) 797, is partial support for our holding here, although the ordinance there

did not prohibit, as in the case at bar, but merely defined what might be drained into the sewer. Were the law as contended by the city, a defense could be built up by simply passing an ordinance and, as here, making not the slightest effort to enforce it.

The duty of maintenance, repair, operation, and the keeping of the sewer from creating a nuisance rested on the city. It could not by mere passage of an ordinance relieve itself from its fundamental duty or delegate its responsibility for injuries to those who connected with the sewer. Hines v. City of Nevada, *supra.*

■ The city makes the further point that the sewer was a condition and not the proximate cause of the nuisance. We see no merit in that contention despite the authorities cited in its support. A sewer is constructed for the very purpose of carrying away the foul substances which would otherwise pollute the surroundings of the city dwellers. If suitable arrangements are not made to purify the effluent, it follows naturally and proximately that a nuisance is created. It is not a mere remote cause or condition contributing to the nuisance. If the sufferers from the nuisance were left to recover from each householder and business in a city, it would create an intolerable situation and be a travesty on justice.

■ Here, as in Shuster v. City of Chisholm, 203 Minn. 518, 282 N. W. 135, there was ample expert testimony to support the verdict. There was evidence tending to show that the bed of the stream became so polluted that the passage of cattle through it stirred up the slime and caused foul odors when the stream was free from ice. The pollution was worse when the canning operations were in progress and became less offensive when they ceased. The drainage from the pile of refuse which did not enter the sewer continued until late in the fall.

Counsel for the city contends that from the evidence it was impossible for a jury to segregate the harm caused by the drainage from the corn refuse pile, for which it claims it is not liable, from that caused by the refuse deposited in the city sewers, and that, therefore, under the principles stated by this court in Johnson v.

City of Fairmont, 188 Minn. 451, 247 N. W. 572, there is no way in which the jury can ascertain the damages which the city must pay. An expert testified that from 85 to 90 per cent of the pollution was caused by the materials from the canning factory coming out of the city sewer and that from 10 to 15 per cent was created by the drainage from the stalk pile. This was sufficient to enable the jury to apportion the harm caused by each source and confine the city's liability to that portion for which it is responsible. See Shuster v. City of Chisholm, 203 Minn. 518, 282 N. W. 135. The instructions to the jury adequately covered the point.

Order affirmed.

MR. CHIEF JUSTICE GALLAGHER took no part in the consideration or decision of this case.

