### WILLIAM KRUEGER v. CITY OF FARIBAULT.[1]

May 18, 1945.

No. 33,935.

[1] Reported in 18 N. W. (2d) 777.

90

*Everett F. Malluege,* City Attorney, and *Thomas H. Quinn* and *Lucius A. Smith,* Special Attorneys, for appellant.

*Carlson & Carlsen* and *L. W. Crawhall,* for respondent.

PETERSON, JUSTICE.

Plaintiff, a farmer living on his farm on the banks of the Cannon River about three to three and one-half miles below the city of Faribault, sues the city to recover damages for inconvenience and discomfort caused by its having deposited raw and untreated sewage into the Straight River, which empties into the Cannon at a point just north of the city. The complaint is that sewage containing waste matter and human excrement so polluted the water that in the spring during high water the sewage was deposited upon plaintiff's land and that during the summer the stream gave off such noisome and offensive odors that plaintiff and his wife in order to avoid the stench were compelled to keep the doors and windows of the house shut and often to leave their home in order to get fresh air. Plaintiff's cows waded in the stream, thereby getting sewage on their udders, and because of that fact the odor

from the cattle was offensive and plaintiff had to wash them before milking them. So far as liability is concerned, the case follows the pattern of cases like Huber v. City of Blue Earth, 213 Minn. 319, 6 N. W. (2d) 471; Herrmann v. Larson, 214 Minn. 46, 7 N. W. (2d) 330; and Satren v. Hader Co-op. Cheese Factory, 202 Minn. 553, 279 N. W. 361.

The defense was, first, a denial of plaintiff's claim that any sewage deposited by the city in the Straight River caused the odors and pollution of which plaintiff complains, and, second, a claim that, if the city's sewage contributed to those odors and plaintiff's resulting discomfort, there was no way of determining the extent of the city's contribution, because there were waste materials coming into both the Straight and Cannon Rivers for which the city was not responsible, and, consequently, that there was no reasonable basis for assessing a definite sum of damages against the city.

The complaint alleged that plaintiff was entitled to recover for damage sustained for more than six years immediately prior to the commencement of the action, but the trial court limited plaintiff's right of recovery, if any, to the six-year period immediately prior to the commencement of the action, that is, from October 1, 1937.

The evidence shows that defendant, at the commencement of the period for which plaintiff seeks recovery, was a city of a little over 12,000 inhabitants and that at the end thereof had a population of about 14,000. During that period it had two main sewers, one for the part of the city lying east of the Straight River and another for the part lying west of it, both draining into the river and depositing raw and untreated sewage therein. Included in the 14,000 population of the city are approximately 3,000 inhabitants of a state institution on the east side of the river, which treats its sewage in what are known as Imhoff tanks so as to remove solids and then drains the effluent into the sewer on the east side of the river. It was also shown that other municipalities upstream such as Owatonna dumped their sewage into the Straight River. On the west side of the city on the Cannon River are certain industries

such as a canning factory, cheese factory, woolen mill, flour mill, and slaughterhouse, which deposited vast amounts of untreated sewage into that river above its confluence with the Straight. Beginning in 1940, the canning factory dumped its sewage into the city sewer on the west side of the Straight River. During hot weather the sewage from the canning factory had the same odor as rotten eggs.

There was much controversy below, as there is here, as to the admissibility of a report of an investigation of the pollution of the Straight and Cannon Rivers by the state board of health in collaboration with the state commissioner of game and fish, referred to below as Exhibit 11. The report covered the period from June 1928 to February 1930, which was prior to the one for which plaintiff might recover. Before the report was offered, defendant had offered some evidence to show that the Cannon River at plaintiff's farm commenced to smell as far back as 1923 or 1924. Plaintiff's evidence showed that "every year" from 1923 or 1924 to and including the year 1942 the odor from the river at his farm was the same.

The report contained much data concerning the pollution of the Cannon and the Straight Rivers. One of the tables showed the density of the pollution of the Cannon River at a point three miles below Faribault, which according to the testimony was at plaintiff's land. The report also contained numerous conclusions and opinions of its authors to the effect that the pollution was a hazard to public health because of the danger that people would drink the water or use it for domestic purposes; that bathing and boating in the polluted water were dangerous; that after periods of high water there were deposits of sewage upon the ground attractive to flies, which spread disease by contaminating with sewage carried by them food, dishes, and milk; and that the pollution of the river was a menace to public health because of the danger of contamination of milk resulting from cows' wading in the stream.

After the report had been received in evidence, defendant called as a witness Dr. H. O. Halvorson, a chemical and sanitary engineer

engaged in the practice of his profession and in teaching at the University of Minnesota. The witness had made an extensive study of and was familiar with the facts concerning the pollution of the rivers in question and the disposition of sewage and industrial wastes. He testified that the men who compiled the report were "very competent." On direct examination, defendant used the data contained in the report as a basis for eliciting from Dr. Halvorson opinions concerning the density of the pollution of the two rivers at various points. With the exception of the month of July 1929, the pollution of the Cannon River, according to the witness's opinion, was greater below its confluence with the Straight River than above it. On cross-examination, the witness stated: "I assume from the evidence that the river [the Cannon] is polluted at the point of the plaintiff [plaintiff's farm]. That has been so stated." The evidence showed that to be the fact. Apparently that was an undisputed assumption at the trial. The witness further testified upon cross-examination that the domestic sewage from the city of Faribault was a contributing and substantial factor to the pollution of the river at plaintiff's property and that the effluent from the state institution was also "a contributing factor" thereto.

He also testified that he agreed entirely with the opinions expressed in the report that the pollution was dangerous to public health because of the fact that it was a source of contamination of milk.

In the charge, which is not otherwise challenged here, the trial judge instructed the jury that the report contained much information which had no bearing at all on the case, such as the parts thereof relating to the Cannon River downstream from plaintiff's farm and the many opinions and conclusions referred to relative to sanitation, to unhealthful and dangerous conditions, and to the effect of polluted water upon livestock. All these matters the jury was cautioned entirely to disregard. The court indicated that it would permit the jury to take the report to the jury room for use during its deliberations. At the conclusion of the charge, the court invited suggestions concerning it from counsel. Thereupon

plaintiff's counsel took some exceptions and defendant's counsel took none, stating, "No, we have nothing."

On appeal, defendant contends: (1) It was error to receive in evidence the report upon the grounds that it was immaterial, irrelevant, and hearsay; (2) the court erred in permitting the jury to take the report to the jury room; and (3) excessive damages were awarded under the influence of passion and prejudice. There are some other assignments of error which counsel treated as being covered by the points stated.

■ The report may be said to consist of two parts so far as concerns its evidentiary character, *viz.:* One relating to the facts concerning the pollution of the Cannon and Straight Rivers and the other consisting of opinions and conclusions of its authors concerning the effects of the pollution. While at the beginning of the trial the fact of pollution as well as the cause of it were disputed issues, it is obvious that during the trial the fact of the pollution of the Cannon River at plaintiff's property came to be accepted as established and the issue had been narrowed to that of defendant's responsibility for it. Defendant's own evidence, the same as the report, showed that the Cannon River was polluted. The examination of defendant's expert witness, Dr. Halvorson, proceeded upon the assumption that the facts stated in the report, including the fact that the Cannon River was polluted at plaintiff's farm, were verily true, and not merely hypothetically so. The witness was permitted to state with at least the tacit approval of defendant that the evidence showed that the Cannon River was so polluted at plaintiff's farm. That being true, so far as pollution was concerned, the report showed only what was an undisputed fact, and for that reason could have caused no prejudice, unless prejudice could be said to have resulted from the opinions and conclusions notwithstanding the cautionary instructions of the court. Error, if any, in admitting evidence of a fact which is undisputed is not ground for a new trial or reversal upon appeal. B. Presley Co. v. Illinois Cent. R. Co. 120 Minn. 295, 139 N. W. 609; Stone v. Evans, 32 Minn. 243, 20 N. W. 149; 5 Dunnell, Dig. & Supp. § 7187.

The parties have discussed at length the question whether the report was admissible under Minn. St. 1941, § 600.13 (Mason St. 1927, §§ 9862, 9863), as a record made by a public officer of facts required or permitted by law to be by him recorded; but, since the admissibility of the report is disposed of on the ground stated, we do not reach the question of its admissibility under the statute.

■ We think that, because of the court's instructions to disregard the opinions and conclusions, no prejudice resulted to defendant. It is to be remembered that the charge so far as it related to the rules by which the substantive rights of the parties were to be determined stands unchallenged. The challenge relates to the matter of what procedural safeguards as a matter of judicial administration should have been adopted at the trial to protect the rights of the parties. In such a situation the parties must be deemed to have been able upon the trial to determine what, if anything, should have been done to safeguard their rights. Where the court instructs the jury to disregard objectionable evidence received during the trial, the presumption is that no prejudice resulted from its reception, and, if the instruction in that regard is in any way inadequate, a party waives the defect by failing to call the court's attention to it at the time. Town of Wells v. Sullivan, 125 Minn. 353, 147 N. W. 244; 5 Dunnell, Dig. & Supp. § 7207. Defendant was satisfied with the charge before the jury retired and so expressed itself. Under the circumstances, its conduct should be deemed a waiver of any alleged defects concerning either the propriety of the jury's taking the report to the jury room or the adequacy of the caution not to consider the parts deemed objectionable as evidence. See, Christenson v. Village of Hibbing, 219 Minn. 141, 16 N. W. (2d) 881; Moeller v. St. Paul' City Ry. Co. 218 Minn. 353, 16 N. W. (2d) 289; Greene v. Mathiowetz, 212 Minn. 171, 3 N. W. (2d) 97.

■ The verdict was for $5,000. The trial court ordered a new trial unless plaintiff agreed to a reduction of the amount to $3,000, which plaintiff did. Defendant claims that the verdict was awarded under the influence of passion and prejudice, but has failed to point

out wherein that is true, except by argument that the award is so large as compared with what the evidence indicates it ought to have been that it can be accounted for only upon the theory that the amount was not determined by a fair and impartial consideration of the evidence. In support of the verdict, it should be remembered that plaintiff experienced severe personal discomfort and annoyance over a period of six years which at times was extreme and aggravated. At times the stench made his home practically uninhabitable. He and his wife were compelled to seek relief elsewhere from the odors. We think that it cannot be said that the damages are so greatly and grossly excessive that they cannot be accounted for except upon the theory that they were awarded under the influence of passion and prejudice. See, 5 Dunnell, Dig. § 7133. Where, as here, the recovery is for personal discomfort and annoyance, no fixed measure of damages can be applied. Much must be left to the discretion of the jury. Regard should be had for the severity and the duration of the nuisance complained of. Pierce v. Wagner, 29 Minn. 355, 13 N. W. 170. In the cited case, a verdict for $800 (reduced by the trial court to $500) for the maintenance for two months of a nuisance consisting of a stable and privy, greatly affecting the comfort of plaintiff and his family and causing serious illness to the wife and several of plaintiff's children, was held not to have been so excessive as to appear to have been granted under the influence of passion and prejudice. Here, the duration of the nuisance was several times that in the cited case and just as aggravated for long periods of time. By analogy (and that is the only value of precedents in passing on the excessiveness of damages in cases of this kind—see, Thoirs v. Pounsford, 210 Minn. 462, 299 N. W. 16), the verdict here is not excessive.

Affirmed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.