KORDELIA GENETTE DONEA v. MASSACHUSETTS
MUTUAL LIFE INSURANCE COMPANY.[1]

June 15, 1945.

No. 34,021.

[1]Reported in 19 N. W. (2d) 377.

*Robert L. Van Fossen* and *Ernest E. Watson,* for appellant.
*Freeman, King & Geer,* for respondent.

PETERSON, JUSTICE.

Plaintiff as beneficiary sues on an insurance policy for $5,000 issued by defendant on her former husband's life. Plaintiff claimed that the insured was dead by presumption on August 15, 1943. This defendant denied. There was no direct proof that he was either dead or alive on the date mentioned. In order to establish the presumption of death, plaintiff introduced evidence to show insured's unexplained disappearance from his home without any tidings from him for a continuous period of over seven successive years. Defendant's evidence consisted of the life mortality tables showing that a man of insured's age had a life expectancy several years beyond the date on which plaintiff claimed he presumptively died. The issues here concern the sufficiency of the evidence to sustain a finding of death, the correctness of an instruction concerning the presumption of death, and alleged error in denying defendant's motion for a new trial upon the ground of newly discovered evidence.

The insured disappeared on August 15, 1936. Plaintiff claimed that he was presumptively dead seven years after that date. Plaintiff and insured were married June 22, 1927, in St. Paul, where plaintiff had spent her entire life except for about two and a half years spent in Minneapolis and California. About a year after their marriage, insured procured the policy of insurance sued on in which plaintiff was named as beneficiary. In 1932, they moved into a house at 1625 Hartford avenue in St. Paul, which plaintiff's mother conveyed to her, where they resided until insured disappeared.

During the day of August 15, 1936, plaintiff and insured went to her mother's home. They picked grapes at the place next door. Insured left ostensibly to collect an account. Late in the afternoon plaintiff returned to their home. She found that insured had been home and had finished painting the back porch. After she had been in the house a short time she discovered a note on the kitchen table written by insured which reads:

"Dear Kor: I am leaving for the mountains because I want to be a forest ranger and I can't seem to get down to brass tacks here. I know you won't let me go so I am taking this way out. But will write and let you know where I am and how I am getting along. Better move in with ma for the winter. Love. Bill."

He left $150 in cash in a drawer accessible to both of them. He departed in his automobile.

It appears without dispute that insured's absence from his home and usual place of abode was continuous for more than seven successive years and that there was complete absence of any tidings from him. There was a sharp conflict as to whether his absence was unexplained and whether plaintiff had made or caused to be made a diligent search for him.

The evidence concerning the fact of whether the insured's disappearance was unexplained was in conflict. It is undisputed that he was an even-tempered, uncommunicative sort of person of good habits. He was 38 years old and plaintiff 32 when he disappeared.

At that time insured was employed in the painting and decorating business. At various times he had driven milk and ice-cream delivery trucks. He had been in California and on the West Coast. His health was good except for acidity of the stomach, which made it necessary for him to "diet." There was evidence that he and plaintiff were happily married, that they had and enjoyed many things in common such as a circle of friends and membership in a church where she played the organ and he had charge of the Boy Scout troop; that they had spent about two weeks together on a vacation in Yellowstone National Park; that, except for minor differences, they had had no quarrels or disputes; and that, on the whole, their married life was harmonious and happy. With respect to the last-mentioned matter, plaintiff testified in answer to a question whether they were *very happy* that they were *happy*. Numerous witnesses testified to such a state of facts. On the other hand, there was evidence that, at least so far as plaintiff was concerned, all was not well. There was a suggestion of another woman in the case, but no proof of that fact; that insured was away from home nights a good deal; that he treated plaintiff cruelly; and that less than a year after his disappearance she obtained a divorce upon the ground of cruel and inhuman treatment. Service of the summons in the divorce action was made upon insured by publication. Plaintiff explained that the divorce was obtained on the advice of her then counsel in order to enable her to convey their home; that, while she verified the divorce complaint, she had not read it; and that many of the allegations therein were not true. On the present state of the record, we cannot say whether or not with the explained matters out of the divorce case enough remained to support a judgment for divorce; nor is it necessary that we should do so.

The evidence to show diligent search for insured was to the effect that plaintiff made inquiries of the secretary of state to determine whether insured had transferred the Minnesota license on an automobile he took with him; that she had made similar inquiries of the automobile registration department of every state of

the United States and every province of Canada except one; and that she had inquiries directed to the department of vital statistics and the highway department accident bureau of every state west of the Mississippi River and to the Selective Service and Social Security Boards of the federal government. In addition, she communicated with defendant, as the insurer, about a year and a half after insured's disappearance and coöperated with defendant in trying to locate insured. Defendant explained to her that it had facilities for finding missing persons which it offered to use. Annually thereafter plaintiff corresponded with defendant concerning the matter and each year was advised that it had not been successful in locating insured. No trace of insured was found as a result of such inquiries. Defendant makes the point that the inquiries were insufficient because none were made of metropolitan police departments, including those of St. Paul and Minneapolis.

After August 15, 1936, insured did not pay any insurance premiums. Apparently the policy had a cash surrender value which with dividends accruing was sufficient to cover the premiums. Plaintiff paid them by loans against these items. Insured did not attempt to collect the cash surrender value of the policy and accrued premiums.

The only evidence offered by defendant was the mortality experience tables, according to which insured had a life expectancy of 29.63 years when he disappeared and 24.54 years at the time of trial.

The trial judge in effect instructed the jury that, where a person has disappeared and been absent from his last or usual place of residence continuously for seven years without any tidings from him, and such absence is unexplained and diligent search has failed to discover the person, "under the law * * * a presumption arises that such person is dead"; that, if the jury found the facts which in law "give rise to the presumption, * * * the presumption is that the absentee no longer lives at the expiration of the seven years from his disappearance"; but that the presumption is not conclusive as to the fact of death; and that "The fact as to death

is for the jury to determine and decide from the evidence that has been received upon the trial. The jury are the sole judges of the issues of fact, and in this case it is the duty of the jury to consider all the evidence that has been received as to the circumstances of the disappearance of the insured, as to his unexplained absence for seven years; as to no tidings from him during such period; as to the efforts made to find the absent person, and from all the evidence you will determine whether or not William Christopher Anderson, the insured, was dead on August 15, 1943." No further reference was made in the charge to presumption of death, but the jury was instructed further in four different connections that its verdict should be based upon the evidence. There was an explicit direction to consider the mortality tables showing insured's probable life expectancy in determining whether he was dead on August 15, 1943.

Plaintiff had a verdict for $4,539.50, the face of the policy less deductions for premium loans, which was the amount due thereon if she was entitled to recover. Defendant appeals.

■ The requirement of diligent search for an absentee insured is satisfied by such search and inquiry as a reasonably prudent person would make in view of the circumstances. The search should extend to all places where information is likely to be obtained and to all persons who in the ordinary course of events would be likely to receive tidings of the absent person, and it must be unsuccessful. Swanson v. Modern Brotherhood, 135 Minn. 304, 160 N. W. 779. Where the evidence is in conflict, the question as to whether the search was diligent is ordinarily one of fact. Boynton v. Modern Woodmen, 148 Minn. 150, 181 N. W. 327, 17 A. L. R.

not to a metropolitan city. It was reasonable to believe that there would be some sort of registration in this or some other state of his automobile, either for a new license to insured or his transferee, if any; that failure to make such registration might be caused by insured's accidental injury or death; that, if employed, he would be registered with the Federal Social Security Board; and that in any event he would have registered in the draft with the Selective Service. These were the sources of information suggested by the evidence. Inquiry concerning them failed to disclose any information concerning him. In this connection it should be remembered that defendant had a financial interest equal to plaintiff's in ascertaining insured's whereabouts, and that, although it coöperated with her, it failed also to obtain any information concerning him. If defendant thought that inquiry of metropolitan police concerning insured's whereabouts was important, it could have made such inquiry just as well as plaintiff could. Defendant did not show what efforts it made to locate insured, but its letters to plaintiff conveyed the impression, to say the least, that its efforts were diligent. Defendant did not suggest that more extended search should have been made until after suit; then it was made not to find the insured, but to escape liability. In this connection, insured's failure to claim the cash surrender value of the policy and accrued dividends is some evidence bearing on the question. Failure of an absentee to claim a fund belonging to him under circumstances such as appear here is some evidence to sustain an inference of death. Bank of Louisville v. Board of Trustees, 83 Ky. 219, 5 S. W. 735. We think that the evidence supports a finding that diligent search was made here.

■ The absence of a person who has disappeared must be unexplainable, except upon the assumption that he is dead. Spahr v. Mutual L. Ins. Co. 98 Minn. 471, 108 N. W. 4; Butler v. Mutual L. Ins. Co. 225 N. Y. 197, 121 N. E. 758. Defendant contends that insured's disappearance is explained by what it claims was an unhappy domestic situation. Whether an insured's domestic situation was unhappy, and, if so, whether it explains his disappearance are

fact questions. It is only where the evidence compels an affirmative answer to both questions, as, for example, where the facts are not in dispute, that it can be held as a matter of law that an insured's disappearance is explained by his unhappy domestic situation. Carlson v. Equitable L. Assur. Society, 188 Minn. 43, 246 N. W. 370. Here, the evidence is in dispute as to both questions. There is abundant evidence to show that insured was happy about his domestic situation. The trip to Yellowstone with his wife, their apparent companionship, their common activities in the church and in their social group betokened domestic happiness. The note which he left when he disappeared shows that apparently he was dissatisfied with his work here and had determined to take up the employment of a forest ranger elsewhere. Likewise, it shows that plaintiff did not want him to make the change. The note reasonably may be construed as meaning that he intended to make the change regardless of her wishes, but not to sever entirely his relations with her. The statement that he would let her know where he was and what he was doing disclosed an intention to communicate with her. It was in effect a promise of future tidings. The suggestion that she move in with her mother "for the winter" contemplated only a temporary living arrangement for her. The implication was that they would make permanent future arrangements afterward. Presumptively, he intended to get together with her again, since a husband's and wife's permanent living arrangements contemplate that they will live together. The note is couched in terms of affection for plaintiff; insured closed it with an expression of "Love." In short, if the note can be taken at its face value, insured was still in love with his wife and expected at some future time to resume the marital relationship with her. The fact that plaintiff got a divorce from insured is an admission by her that she was unhappy (see, Goodier v. Mutual L. Ins. Co. 158 Minn. 1, 196 N. W. 662, 34 A. L. R. 1383, *supra*) ; but the divorce judgment was not *res judicata* as to the facts upon which it was based and was subject to explanation by plaintiff. Tyrrell v. Prudential Ins. Co. 109 Vt. 6, 192 A. 184, 115 A. L. R. 392. Nor was it *res judicata* that insured was alive

at the time the divorce proceedings were instituted. Simpson v. Simpson, 162 Va. 621, 175 S. E. 320, 94 A. L. R. 909. In view of the explanations which were made concerning the allegations in the divorce complaint and the facts with respect to relations between plaintiff and insured, the divorce proceedings created issues of fact as to whether insured's domestic situation was unhappy and whether, if so, his disappearance is explainable by that fact. Ledger v. N. W. Mut. L. Ins. Co. 258 Mich. 26, 241 N. W. 803; Moknach v. New York L. Ins. Co. 67 Ohio App. 293, 36 N. E. (2d) 529. After all, the inquiry related to insured's state of mind and not plaintiff's. Her state of mind was important only as showing what his might have been. The only evidence concerning insured's state of mind, including the note which was his last known declaration concerning the matter, showed that he was happy in his domestic situation. In the light of the other circumstances, including the divorce proceedings, the question whether he disappeared because of an unhappy domestic situation was clearly for the jury.

■ Defendant's contention that the trial court erred in its instructions by permitting the jury to consider the presumption of death as evidence of the fact reaches the real vice of ever giving a presumption to a jury. Giving a presumption to the jury to consider in determining the existence of a fact permits it to consider as evidence something which plainly is not. A presumption is not evidence and for that reason should never be considered as such by the jury. A presumption is a rule of law to be applied by the court in dictating decision on opposed facts and in shifting the burden of going forward with the evidence. The function of a presumption occurs prior to the introduction of evidence to rebut it. Being a rule of law to be applied by the court, a presumption is not a matter for the jury. Ryan v. Metropolitan L. Ins. Co. 206 Minn. 562, 289 N. W. 557.

In the Ryan case (206 Minn. 567-568, 289 N. W. 560), in explaining the application of the rule in a case of presumption of death, where there is no rebutting evidence, we said:

"* * * So also an unexplained and otherwise unexplainable absence for seven years compels decision that the person is dead. In such cases there is nothing for the jury. Decision is controlled by a rule of law. That is the true and limited function of a presumption. It controls, rather than permits, decision."

Where there is rebutting evidence, which is for the trial judge to determine as a matter of law, the fact of death should be submitted to the jury for its determination upon all the evidence without considering the presumption. In such a case, the presumption is displaced by the rebutting evidence. Ogren v. City of Duluth, 219 Minn. 555, 18 N. W. (2d) 535. Where the presumption disappears, as it does where there is evidence to rebut it, as distinguished from evidence preventing it from ever coming into operation, the fact claimed is to be determined by considering all the evidence without aid of the presumption. The trier of fact may draw reasonable inferences from the facts which gave rise to the presumption and from any other evidence in the case. The same evidence which gave rise to a presumption of death permits a finding of the fact of death, but the presumption, as such, cannot be considered in determining that fact. Scott v. Prudential Ins. Co. 203 Minn. 547, 282 N. W. 467; Tyrrell v. Prudential Ins. Co. 109 Vt. 6, 192 A. 184, 115 A. L. R. 392.

In short, where there is evidence to justify a finding of the basic facts which give rise to a presumption of a fact, but none contrary to the presumed fact, the jury should be instructed that, if it finds the basic facts, the presumed fact must be taken as true. Where there is evidence justifying a finding contrary to the presumed fact, the judge should say nothing about the presumption, since it is then out of the case, and should leave it to the jury to find the existence or nonexistence of the presumed fact upon all the evidence exactly as if there never had been a presumption at all. See, Am. L. Inst., Model Code of Evidence, Rule 704, *comment,* B (1, 2) on p. 317.

There was sufficient evidence to rebut the presumption of death to make the issue as to whether insured was dead or alive one of

fact. While there might have been other evidence, a question we do not decide, plaintiff's implied admissions arising from the institution of the divorce proceedings were under the circumstances of this case such evidence. The admissions arise because the institution of the divorce proceedings assumed for the purposes of that case, at least, that the defendant in that action was alive. As pointed out in Simpson v. Simpson, 162 Va. 621, 631, 175 S. E. 320, 325, 94 A. L. R. 909, 914, while the divorce decree is not *res judicata* that the defendant in the action is alive at the time of its rendition, "The court does not stop to examine into that question. It provisionally assumes he is alive and proceeds to decree. If he is dead the tacit provision upon which the decree was entered having failed, the decree falls with it." An admission is substantive proof of the fact to which it relates. Cargill, Inc. v. Spaeth, 215 Minn. 540, 10 N. W. (2d) 728.

Here, the trial judge did not instruct the jury precisely in accordance with the views stated. Instead, he first told the jury that if they found the basic facts they must as a matter of law find the presumed one; but that the presumed fact was not conclusive, and for that reason they must find the existence or nonexistence of the presumed fact from all the evidence. They were so told seven times in all. The court did not go so far as to define the role of the presumption of death, if the jury found the basic facts giving rise to it; it did not instruct the jury explicitly to consider the presumption or to disregard it. What the court said both as to the presumption coming into operation and the duty of the jury to base its finding as to the existence or nonexistence of the fact of death upon the evidence was a correct statement of the law. The trouble here arises from the fact that under the circumstances there is doubt as to whether the jury was permitted to consider the presumption of death in making its findings. That ambiguity should have been cleared up at the trial by a timely request for a corrective instruction defining the role of the presumption of death in accordance with the views above stated. That is precisely what was done in a similar situation in Equitable L. Assur. Soc. of

United States v. Sieg (6 Cir.) 74 F. (2d) 606. If the jury understood, as it should have done, that it was to base its findings upon the evidence without considering the presumption, the verdict was reached in exactly the manner required by the rule. The instant case comes within the rule that, where an instruction is open to two constructions, one of which is correct and the other incorrect, it will be presumed that the former is the sense in which it was given and understood, unless the ambiguity was called to the attention of the court at the time with a request to correct it. Erd v. City of St. Paul, 22 Minn. 443; Siebert v. Leonard, 21 Minn. 442. While Minn. St. 1941, § 547.03 (Mason St. 1927, § 9327), the so-called "lazy lawyer's law," does not require exceptions to instructions to be taken orally and permits them to be taken in the notice of motion for new trial, it does not go to the length of permitting ambiguous or verbally inaccurate instructions to be so challenged. Errors, if any, arising from such defects can be asserted only where they were called to the court's attention at the time with a request for correction. Hubred v. Wagner, 217 Minn. 129, 14 N. W. (2d) 115; Greene v. Mathiowetz, 212 Minn. 171, 3 N. W. (2d) 97; see, Krueger v. City of Faribault, 220 Minn. 89, 18 N. W. (2d) 777. Prejudice does not result merely because a presumption is referred to. Moeller v. St. Paul City Ry. Co. 218 Minn. 353, 16 N. W. (2d) 289; Bimberg v. N. P. Ry. Co. 217 Minn. 187, 14 N. W. (2d) 410; Lang v. C. & N. W. Ry. Co. 208 Minn. 487, 295 N. W. 57; State v. Plym, 43 Minn. 385, 45 N. W. 848. Our conclusion is that under the circumstances defendant should have made a request to the trial court at the time to instruct the jury that it should not consider the presumption and that, because of defendant's failure to do so, it is in no position on appeal to claim prejudice.

■ Defendant also moved for a new trial upon the ground of newly discovered evidence, shown in part by affidavits of some of insured's relatives on the Pacific Coast consisting of hearsay, to the effect that insured's disappearance was explainable by his unhappy domestic situation, and in part by an affidavit of a resident of Dallas, Texas, that insured was alive and in West Los Angeles,

California. The affidavits of the relatives showed no basis for a new trial. A new trial will not be granted on hearsay. Peterson v. Skarp, 117 Minn. 102, 134 N. W. 503. The other affidavit did not show that the person referred to as insured was in fact he. Where the identity of a person is involved, the affidavit must show facts and circumstances from which it appears with certainty that the affiant knew the person referred to. Where, as here, the identity of the person referred to is left in doubt, the motion should be denied. State v. Fay, 88 Minn. 269, 92 N. W. 978. A great deal of vague and unsatisfactory evidence of this sort is resorted to in cases of this kind. It should be scrutinized carefully. See, Swanson v. Modern Brotherhood, 135 Minn. 304, 160 N. W. 779; Pierson v. Modern Woodmen, 125 Minn. 150, 145 N. W. 806. We think that the trial judge was justified in denying the motion upon the ground that the showing was unsatisfactory.

Affirmed.

[1]Reported in 19 N. W. (2d) 389.