May F. Taylor, Administratrix, Appellee, v. Lloyd Wistey, Appellant.

No. 42253.

April 3, 1934.

Rehearing Denied September 27, 1934.

Harvey J. Bryant and Putnam, Putnam, Langdon & Fillmore, for appellant.

W. G. Henke and F. A. Ontjes, for appellee.

Kindig, J.—On the night of April 6, 1932, at about 11:30 o'clock, Charles W. Taylor, while walking on Federal Highway No. 218, a mile and three quarters south of Plainfield, was struck and killed by an automobile driven by the defendant-appellant Lloyd Wistey. Federal Highway No. 218 is a north and south paved thoroughfare. The pavement is 18 feet wide.

At the time of the accident, Charles W. Taylor was walking

northward on the right-hand side of the pavement, with his back to the oncoming traffic. Just before the accident, Charles W. Taylor had passed over a rather steep hill. It is said that the hill slopes southward for a distance of 600 feet. When measured at a point about 400 feet north from the top of the hill, the highway was about 30 feet lower than the top of the hill. This hill interrupted the view that Taylor would have of automobiles approaching beyond the hill from the south.

Taylor was struck by appellant's automobile at a disputed point located somewhere between 400 to 225 feet from the top of the hill. There is a controversy concerning the exact location of the accident. As the appellant's automobile passed over the top of the hill northward to the point where it struck Taylor, it was traveling at a rate of speed of from 45 to 50 miles per hour. According to the claim made on behalf of Taylor, he was walking, when struck by the automobile, at a point about 2 feet from the east side of the pavement. On the other hand, the claim is made by the appellant that Taylor was walking nearer to the center of the highway.

A second automobile, coming from the north, approached the point where Taylor was walking, as the appellant's automobile neared such point from the south. Headlights on each automobile were lighted. Harlan G. Staley was riding in the front seat of the appellant's car on this occasion. Staley was the first to observe Taylor before the accident. He saw Taylor about 20 to 30 feet ahead of the automobile just before the impact. Immediately upon seeing Taylor, Staley notified the appellant, who was driving. Thereupon the appellant put on the brakes and turned the car to the left, but could not miss Taylor. At the time that Taylor was first observed, the second automobile, above mentioned, was passing the car driven by the appellant. Concerning this, Staley testified that when the appellant's car was from 20 to 30 feet south of Taylor, the second oncoming car, just mentioned, was about 10 feet north of the appellant's car.

As a result of the impact, Taylor was killed. Thereafter May F. Taylor was appointed the administratrix of his estate. In due time May F. Taylor, administratrix of the estate of Charles W. Taylor, deceased, the plaintiff-appellee, commenced this action against the appellant to recover damages for the alleged wrongful death of her intestate. The cause was tried to a jury, which returned

a verdict for the appellee, and the district court entered judgment thereon. From that judgment, the appellant appeals.

It is alleged in the appellee's petition that the appellant was negligent immediately preceding, and at the time of, the accident in the following particulars: First, that he drove his automobile without due caution and circumspection; second, that he drove his automobile at an excessive rate of speed and in an imprudent and careless manner; third, that he operated his automobile without having it under control; and, fourth, that he failed to warn the appellee's intestate of his approach. By way of answer, the appellant denied generally each and every material allegation of the petition relating to his negligence, and in addition thereto the appellant pleaded affirmative defenses. Therefore, not only was it essential for the appellee to prove the negligence of the appellant, but likewise it was necessary for her to prove that her intestate, Charles W. Taylor, did not by his negligence contribute to the accident. Consequently the contributory negligence of the appellee's intestate became a material issue. Because a new trial is necessary, we refrain from discussing the sufficiency of the evidence on the appellant's negligence, and likewise, for the same reason, we will not, except for the purpose of considering an instruction, review the evidence relating to the contributory negligence of the appellee's intestate.

An instruction was given to the jury by the district court on the subject of the contributory negligence of the appellee's intestate. But it is contended by the appellant that such instruction was erroneous, and that the resulting error is sufficient upon which to predicate a reversal of the judgment of the district court. The error in the instruction, according to the appellant, lies in the definition of the due care to be exercised by the appellee's intestate when making observations for his safety while walking on the highway at the time in question. Instruction No. 8 is the one involved. There, among other things, the district court told the jury that the plaintiff's intestate "might walk on the right side of the highway in the direction he was going provided he exercised the increased care required of a pedestrian from vehicles that might approach him from his rear, and though he may lawfully travel there, he must recognize that ordinary care requires generally a greater attention and watchfulness to avoid danger than where one walks facing the

line of travel. * * * " Then, in a concluding sentence, the district court continues:

"He (the appellee's intestate) was required to use his senses in looking both ways for his safety, not at any particular point or *continuously*, but as often as ordinary care under the circumstances required." (Italics supplied.)

It is said by the appellant that it was error for the district court to tell the jury that it was not necessary for the appellee's intestate to look both ways continuously. The circumstances were such, the appellant contends, that it was incumbent upon the appellee's intestate to continuously make observations forward and backward for his safety. On the other hand, it is argued by the appellee that it only was necessary for her intestate to use ordinary care, and that ordinary care did not require a continuous observation forward and backward. Under the instruction, the jury were expressly told that in fixing the care which the appellee's intestate was required to exercise at the time they were not to include therein the necessity for him to continuously look both ways for his safety. By the instruction, the district court did not leave to the jury the privilege of saying that due or ordinary care on the occasion would require that the appellee's intestate continuously look both ways for his safety; but rather the district court told the jury that due or ordinary care on the part of the appellee's intestate did not require that he continuously look both ways for his safety.

Of course, all that is required of a traveler on a highway is that he use due or ordinary care. Hittle v. Jones, 217 Iowa 598, 250 N. W. 689. Conduct, however, that would amount to due or ordinary care under certain circumstances, might be less than due or ordinary care under different conditions. Everything depends upon the facts and circumstances of the case. When the danger becomes greater, correspondingly the degree of caution necessary to constitute due and ordinary care likewise increases. Kessel v. Hunt, 215 Iowa 117, 244 N. W. 714; Lindloff v. Duecker, 217 Iowa 326, 251 N. W. 698. As we said in Kessel v. Hunt, supra, reading on page 121, concerning the duty of a pedestrian on the paved highway in the nighttime:

"His duty on whichever side of the street he walks, is to use ordinary care in the situation in which he puts himself and under all the circumstances surrounding him. 'Ordinary care' is the legal

standard. But we have also held that the degree of caution which constitutes ordinary care varies with the circumstances; that the greater the apparent danger, the greater the degree of caution, which constitutes ordinary care. In other words, 'ordinary care' may expand or contract according to the circumstances in which the actor finds himself."

A pedestrian who walks on the left-hand side of the paved portion of the highway where he may face the oncoming traffic is in a safer position than the pedestrian who walks on the right-hand side of the highway with his back to the oncoming traffic. Referring again to the case of Kessel v. Hunt, supra, there is found on pages 120 and 121, the following discussion:

"It is quite universally accepted at the present date that the left side of the street is the safer side for a pedestrian. By putting himself close to the left edge of the pavement the pedestrian faces all traffic without the inconvenience of looking around. Nevertheless the pedestrian is not bound to adopt such a course. He may walk on the right side, if he will."

To the same effect, see Lindloff v. Duecker, supra.

In the case at bar the appellee's intestate chose the more dangerous side of the highway on which to walk. Had he walked on the left-hand side of the pavement and faced the traffic, he easily could have observed all oncoming automobiles. But he did not do that. On the other hand, he placed himself on the right-hand side of the pavement where his back was turned to oncoming automobiles. By so doing, the appellee's intestate increased the danger of his travel. There were shoulders on each side of the pavement. These shoulders were approximately three feet wide. While it had rained, and the ground was damp, it does not appear that the appellee's intestate could not have readily stepped upon the shoulder of the highway to permit the passing of oncoming vehicles. The night was exceedingly dark. Being on the north side of a steep hill, the appellee's intestate was obscured from the vision of automobile drivers approaching from the south side of the hill. An automobile approaching over the hill from the south at the rate of fifty miles per hour would cover, in a matter of from three to five and one-half seconds, varying according to the disputed location of the accident, before explained, the distance between the top of the hill and the point where the appellee's intestate was walking.

Moreover, another car was approaching the appellee's intestate from the north. Consequently the reflection of the lights from that car would be apt to be confused by the appellee's intestate with the reflection of the lights from the car approaching from the south. So, too, the noise made by the approaching car from the north perhaps would be confused by the appellee's intestate with the sound of the approaching car from the south. If the car approaching from the north passed the car coming from the south at or near the place where the appellee's intestate was walking upon the highway, the danger naturally would be increased. While the car approaching from the north was opposite appellee's intestate on the highway, the vehicle coming from the south could not readily, if at all, materially turn to the left in order to go by the appellee's intestate. Recently there had been a rain, the night was dark and cloudy, and for other reasons there may have been shadows upon the pavement which might, to some extent at least, have obscured the appellee's intestate from the view of the driver of an approaching car.

All these contingencies should, and must, have been taken into consideration by the appellee's intestate when determining the degree of his care while traveling northward on the east side of the highway. The fact that the vision of the appellee's intestate was obscured by the hill to the south increased the hazard of walking on the highway at the time and place in question. Because the view to the south was thus obstructed, more frequent observations to the south were essential. Safety required this. When the appellee's intestate chose the more dangerous side of the road, it was necessary for him to make observations which would be commensurate with the increased danger. Consequently, repeated observations to the south were essential for due or ordinary care under these circumstances.

Referring now to the instruction under consideration, it is to be observed that the district court did not tell the jury that it was not necessary for the appellee's intestate to constantly look backward. What the court, in fact, told the jury was that the appellee's intestate in the exercise of due care need not continuously look both ways. By the use of the words "both ways," the court below, according to the context of the instructions, meant backward and forward. Perhaps under the circumstances of this case it was not so important for the appellee's intestate to look forward as it was for him to look back. However that may be, it was necessary that

he make proper observations to his rear commensurate with the requirement that he exercise due or ordinary car. In Kessel v. Hunt, supra, the district court granted a new trial on the plaintiff's motion because that tribunal did not tell the jury, in accordance with the plaintiff's requested instruction, that "a pedestrian," in keeping "a reasonable lookout for vehicles approaching from the rear as well as from the front does not require the pedestrian to turn about constantly and repeatedly to observe the possible approach of vehicles from behind him, especially where there is ample room for a vehicle to pass him." We reversed the district court because it granted a new trial on that basis. There was a bend in the road in the Kessel case which obstructed the view of the pedestrian. Under the circumstances, we held that the district court, in the Kessel case, should not tell the jury that it was not necessary for the pedestrian to constantly look back. Due or ordinary care might have required that he do so. Consequently we refused, in the Kessel case, to prevent the jury from finding that the pedestrian, in the exercise of due or ordinary care, might be required to constantly look back.

As we have said before, the district court in the case at bar did not say to the jury that due or ordinary care would not require that the appellee's intestate constantly look back. But the district court here said that due or ordinary care did not require that the appellee's intestate continuously look backward and forward for his safety. Obviously, in view of this record and our pronouncements upon the subject, it was error for the district court to thus limit the jury. The jury under the circumstances would have been warranted in finding, had they been so inclined, that an ordinarily careful and prudent pedestrian under the same or similar circumstances would have looked backward to an extent that, and as often as, would embrace not only the care required by, but also the care made unnecessary through, the district court's instruction containing the limitation of which complaint is here made. Although in the Kessel case, supra, a bend in the highway made increased observations necessary, here the obstruction caused by the hill likewise made imperative corresponding observations by the appellee's intestate. In view of the fact that the contributory negligence of the appellee's intestate was a material issue in the case, it is evident that the erroneous instruction of the district court, even when read with all the instructions in the case, was prejudicial to the appellant.

Wherefore, the judgment of the district court must be, and hereby is, reversed.—Reversed.

CLAUSSEN, C. J., and EVANS, ALBERT, and DONEGAN, JJ., concur.