JUEL A. HUBRED v. BALTHASER WAGNER.[1]

April 6, 1944.

No. 33,600.

[1]Reported in 14 N. W. (2d) 115.

130

*Freeman, King & Geer,* for appellant.
*Dell & Dell* and *Dell & Rosengren,* for respondent.

HOLT, COMMISSIONER.

On December 19, 1942, shortly before nine o'clock in the evening, Darrel D. Hubred, a son of plaintiff, then 12 years and 8 months old, was struck dead by an automobile driven by defendant's 20-year-old son, Philip. The automobile was owned by defendant, who had consented to its use by Philip. The day had been blustery with some snow falling and so continued through the evening, with the wind from the east. Defendant and his son lived on a farm about

5½ miles north of Alexandria, this state, on trunk highway No. 29. Darrel was delivering newspapers to his customers. No one saw Darrel struck except Philip, and he saw him only a fraction of a second before the impact. His testimony was to the effect that as he was driving south on said highway at a speed of 30 to 35 miles an hour he met a car a short distance north of the "pillars" to the entrance to the city park on the west side of the highway and dimmed his headlights; that he did not restore or raise them, because another automobile with glaring lights was approaching; and that, as he passed this last auto, he saw Darrel some 10 to 12 feet in front of his car. He jammed on the brakes, the car slid along in the right lane, and stopped facing north. Darrel's body lay about 50 feet northerly of where the car stopped. Philip picked up the body, placed it in the car, and took it to a hospital in Alexandria. The right headlight of the car was broken, and the front of the right fender dented. Afterward, he and two police officers drove back to the place of the tragedy, and he pointed out where the body had lain when he picked it up, and some measurements were taken. A flashlight, which Darrel had bought that day, and his mittens were found 50 feet northerly of where his body had lain. His shoes also were found near the other articles. There is no dispute that along the entrance to the park the highway turns easterly in a gentle curve of 2° 30′ in 100 feet, and that the highway slopes toward the south 1.8 feet in every 100 feet. The evidence also shows that there is a cut on the east side of the highway opposite the park entrance. On account of the falling snow and the drifting of it from the east, the contention of the plaintiff is that the east lane of this tarvia highway was impassable to Darrel if he were to walk there against northbound traffic. The foregoing may suffice to show the situation bearing on the questions presented by the appeal.

■ There is no claim, nor can there be, that Philip's negligence was not a jury issue. But the contention of defendant is that he was entitled to a directed verdict on the ground that Darrel was guilty of contributory negligence as a matter of law, and hence that he should now have judgment notwithstanding the verdict. It is

said that it was conclusively proved that Darrel was walking south on the west lane of traffic instead of on the east lane so as to meet oncoming traffic, as required by Minn. St. 1941, § 169.21, subd. 5 (Mason St. 1940 Supp. § 2720-207). There was evidence that the 20-foot tarvia roadway was covered with snow, and conflicting testimony as to the depth of it on the east lane and as to whether there was one auto track or two tracks with space between where Darrel was struck. Even if the statute mentioned was violated, it was only prima facie proof of negligence; and it was for the jury to determine whether under the situation there present Darrel was excusable for walking where he did at the moment of the fatal impact. Wojtowicz v. Belden, 211 Minn. 461, 1 N. W. (2d) 409, is cited. In that case, there was a two-lane highway, with a grass boulevard between. While there was snow on parts of each lane, the evidence showed that the walking was just as good for the decedent in that case when meeting traffic as when going in the other lane, forbidden by the statute. Such is not the situation in the case at bar. Moreover, here is a boy not yet 13 years of age, not a grown man, as was Mr. Wojtowicz. Defendant contends that Darrel should have walked on the west shoulder of the highway, but it cannot be said as a matter of law that it was negligence not so to do. It does not appear that one could tell where the shoulder was, there being no demarcation between the roadway and the shoulder or bank on the west side. We conclude that the issue of Darrel's contributory negligence was for the jury.

■ In the motion for a new trial defendant assigned as error, also on this appeal, the refusal of the court to give a requested instruction to the effect that Darrel was required by the statute to walk against oncoming traffic. "His failure to walk upon the east half of this road, if it was reasonably suitable for a pedestrian to walk upon it, is negligence. If you so find, the plaintiff is not entitled to recover in this action." The requested instruction was rightly refused. The violation of the statute was only prima facie evidence of negligence. It also took no notice of Darrel's age.

■ Misconduct of plaintiff's counsel in his final address to the jury on the subject of damages and improper statements in the charge of the court of possible bearing on damages are assigned as grounds for a new trial. The character of the misconduct of plaintiff's counsel sufficiently appears from the language in which defendant's counsel excepted thereto:

"You don't have to believe that the car was only going 35 miles an hour, you can look at these shoes and clothes and the other evidence and the way the body was mangled. He drove along with the low beam for a quarter of a mile before he got to Alexandria, he was obliged to have them on high beam"; and in asking, "was he driving with proper lights, did he comply with the law?" and in the following statement: "What is a human life worth? It does not mean a rich man's life is worth any more than a poor man's life; many feel that $25,000 or $50,000 isn't enough, but the legislature has put a stop at ten so people would not return such large verdicts. That does not mean rich men are worth ten thousand and poor men five. You go out and find that damages are $20,000 but you got to stop at ten"; and "I will collect every thin dime of it."

In connection with the alleged misconduct of plaintiff's counsel, certain statements in the court's charge are assigned as prejudicial errors. Referring to Darrel and his parents, the court said: "We must give them something to take the place for what they have lost"; and "he was a bright young lad * * * how much in money was that boy's life worth to his parents," "what these good people have lost." The verdict was for $6,500, but there is no way of determining to what extent the size of the verdict was affected by the improper remark of the court and counsel.

■ Apparently neither court nor counsel considered that violation of the traffic statutes by Darrel or Philip was only prima facie evidence of negligence. For the first time in the motion for a new trial, defendant specified error in the charge as to the effect of violations of the traffic act. While the assignment of the error which is in paragraph (2) of subdivision 6 of the grounds stated in the motion (Record, p. 372) is not too well formulated, it never-

theless does refer to the traffic acts and the failure to observe them as negligence. (See Record, p. 351, f. 1051, and p. 349, f. 1047.) The particular assignment refers to the language on page 351, which includes the phrase "unless excusable," but on page 349 the court also says a "failure to observe the traffic laws is negligence." Apparently neither court nor counsel recalled that the traffic act had been amended so as to provide that violation thereof should only be prima facie evidence of negligence on the part of the violator. Since the language of the charge applied both to the plaintiff and the defendant, we must assume that it was prejudicial to the defendant.

However, we think we should invite the attention of the legislature to the hardships imposed upon litigants by Minn. St. 1941, § 547.03 (Mason St. 1927, § 9327), which provides:

"* * * that in order to obtain a review of any such ruling, order, decision, *or instruction* made *or given* by the court it shall not be necessary to take an exception thereto, but in lieu of an exception the aggrieved party shall clearly specify the alleged error in his notice of motion for a new trial or other relief therefrom." (Italics supplied.)

In our opinion, the inclusion of instructions with the rulings, orders, and decisions which need not be excepted to obstructs, rather than furthers, justice. The case at bar conspicuously illustrates our point. Experienced lawyers on both sides of this case permitted the trial court to fall into the error which we have noted above without inviting his attention thereto. Undoubtedly the trial court would have corrected this and all other errors had his attention been invited to it or them. This act of the legislature was originally commonly called "the lazy lawyer's law," and it frequently results in new trials which would otherwise be unnecessary. Certainly if a lawyer goes into a trial he should at least inform himself about the law which applies to the litigation and be ready to except to an erroneous instruction. We see no harm in eliminating exceptions as a preliminary necessity to the review of rulings, orders, or decisions, especially if, as the present law requires, such rulings, etc., must be specified in the motion for new trial. The

important thing is that the trial court be timely advised as to the challenge to the correctness of its rulings, etc., and that object is attained by the objections interposed before the rulings. But as to instructions to the jury, a lawyer may, as in this case, sit back and, without objection or exception, permit the court to make a misstatement of fundamental law or other matter falling outside of a mere inadvertence. He may then gamble on the results. If it is unfavorable, he can specify the error in his motion for new trial; and, if the error is prejudicial, he will get another day in court, and this on a matter never called to the court's attention on the trial. We cannot believe the legislature realized that this would be the result of including instructions in the provisions of the 1919 act. Such inclusion delays justice unnecessarily and increases its expense to litigants and to the public. It seems to us that the elimination from the law of the words which we have italicized in the quotation would be in furtherance of justice.

The order is reversed and a new trial is granted.

STREISSGUTH, JUSTICE (concurring specially).

In my opinion, the remarks of counsel for the plaintiff in his argument on the question of damages were not such as to require a new trial. The reversible error lies in the court's instructions.