# WILLIAM E. BRODD v. ALVIN PRIEM.[1]

March 7, 1952.

No. 35,623.

*Mordaunt & Mordaunt* and *Smith & Becklund,* for appellant.
*Herbert E. Olson,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action for damages for injuries sustained by plaintiff by reason of the alleged negligence of defendant in the operation of the latter's automobile on state aid road No. 19 within the village limits of Blackduck on January 21, 1950.

At the close of the evidence, the court submitted to the jury the issue of defendant's negligence and plaintiff's contributory negli-

[1]Reported in 52 N. W. (2d) 429.

gence. It returned a verdict in plaintiff's favor in the sum of $4,000. Defendant's subsequent motion for judgment notwithstanding the verdict was denied, and judgment entered June 11, 1951. This is an appeal therefrom.

The only issue presented is whether, as a matter of law, plaintiff was guilty of contributory negligence causing his injuries and damage.

State aid road No. 19, upon which the accident occurred, passes through a part of the village of Blackduck in an east-west direction and is known therein as Summit avenue. On January 21, 1950, about noon, plaintiff, then 80 years of age, coming from his home to the south of this highway, had entered it, turned to his right thereon, and was proceeding easterly on the south side thereof toward the village when he was struck from the rear by defendant's car. At the time, the highway had a driving surface of approximately 24 feet, having been cleared to that width by a snowplow which had left snowbanks to the height of at least three feet on either side of the cleared portion.

Plaintiff testified that he had looked both to the east and west as he entered the highway and had seen no cars approaching from either direction; that he found the surface to be in an icy and treacherous condition because of ridges of ice, particularly on the north lane and center thereof; therefore, that he walked along the south lane about two feet out from the edge of the snowbanks; that as he progressed easterly he continuously looked for a place to cross over to the north lane and was struck almost immediately, after hearing a horn sound close behind him, by defendant's car operated by defendant. The spot where he was struck, as stepped off by the deputy sheriff, was approximately 114 feet from the place where plaintiff first entered the highway.

Other witnesses testified that the point of contact was about 8 feet from the south side of the cleared portion of the highway, and that skid marks extended therefrom approximately 40 feet into and across the north ditch then filled with about $4\frac{1}{2}$ feet of snow.

Defendant asserts that, because of plaintiff's violation of M. S. A. 169.21, subd. 5, which requires pedestrians to walk near the left-hand side of the roadway and to yield to oncoming traffic, and subd. 3, which requires pedestrians crossing a roadway at any point other than within a marked crosswalk to yield the right of way to all vehicles thereon, he must be held to have been guilty of contributory negligence as a matter of law.

■ We have repeatedly held that by virtue of § 169.96 the violation of our highway traffic regulation statutes constitutes only prima facie evidence of negligence. Demmer v. Grunke, 230 Minn. 188, 42 N. W. (2d) 1; Hubred v. Wagner, 217 Minn. 129, 14 N. W. (2d) 115.

Here, there is much evidence from which a jury might conclude that plaintiff was justified in walking on his right-hand side of the highway. There were many icy ruts and ridges on the north lane and center thereof. Plaintiff chose the course most favorable to his line of travel and safety. He testified that he intended to cross to the north lane when he came to a point where the surface would permit crossing without undue risk of injury from a fall. It would not seem just to hold that in thus acting to protect himself he must be held guilty of negligence as a matter of law. In arriving at this conclusion, we find ample support in our previous decisions. As stated in Nicholas v. Minnesota Milk Co. 212 Minn. 333, 336, 4 N. W. (2d) 84, 86:

"If plaintiff was on the wrong side of the roadway, and conditions underfoot did not justify his being there as matter of due care, his position of peril was the result of his own negligence, and he was not entitled to the benefit of the emergency rule. It would have been otherwise if he had shown conditions which would have enabled the jury to say reasonably that it was due care for him to be where he was."

See, also, Hubred v. Wagner, 217 Minn. 129, 14 N. W. (2d) 115; Wojtowicz v. Belden, 211 Minn. 461, 1 N. W. (2d) 409.

■ Defendant asserts further that, since plaintiff admitted that upon hearing defendant's horn he turned abruptly to proceed to

the north side of the highway without looking to his rear or yielding the right of way to defendant, as required by § 169.21, subd. 3, it must follow that he was guilty of negligence as a matter of law.

Plaintiff's testimony with respect to this aspect of the case was as follows:

"Q. At the point where you heard the horn just tell the jury where you were walking with reference to the snow bank on the south side of the road.

\* \* \* \* \*

"A. Well, I was right there where I was then, you know, and then the horn was blowing and he was right behind me, \* \* \*

\* \* \* \* \*

"Q. At the time you heard the horn what did you do?

"A. Well, I can't tell you that, either. I suppose I tried to get across, maybe I stepped up, and that's the time he hit me, see?

"Q. To your knowledge how far had you traveled northerly, if any, at the time that you were hit?

"A. I didn't travel northerly at all, \* \* \* I stepped out going to try to go across. I thought maybe he was behind.

\* \* \* \* \*

"Q. About how much time elapsed from the time you heard the horn until you were hit?

"A. I was hit right away, I guess, as quick as I stepped off. I think I stepped off."

The foregoing testimony does not constitute an admission on the part of plaintiff that he had actually commenced to cross to the north at the time he was struck by defendant's car. Further, it is obvious therefrom that his actions after hearing defendant's horn were involuntary and produced by fright at being suddenly apprised of the presence of a car close behind him. The court gave to the jury verbatim the requirements of § 169.21, subd. 3. After reading this and other sections to it, the court instructed the jury:

"If you find the plaintiff violated any of these statutes at the time of the accident then you should find that there was negligence

on his part unless all the facts and conditions and circumstances disclosed by the evidence furnish such an explanation or excuse for violating such statute or statutes that you are not satisfied by a fair preponderance of the evidence that it was negligence to violate such statutes."

These instructions, coupled with an appropriate charge on proximate cause, properly left this issue for the jury's determination. Anderson v. Kelley, 196 Minn. 578, 265 N. W. 821.

Affirmed.

LORING, CHIEF JUSTICE (dissenting).

The provision of M. S. A. 169.21, subd. 5, of the highway traffic regulation act, that "Pedestrians when walking along a roadway shall walk near the left side of the roadway giving way to oncoming traffic," was enacted to require pedestrians, for their own safety, to walk so that they face and can see the traffic approaching them along the lane in which they are walking and *to give way to it*. By this statute, the use of public highways by pedestrians is restricted. They are no longer, as before the statute, free to use such part of the highway as they may choose without encountering the prima facie presumption of lack of care. By the use of the phrase "giving way to oncoming traffic," the statute cannot be interpreted otherwise than as requiring pedestrians to step out of the way of such traffic, and that would *not* mean stepping into the middle of the roadway or in any other direction than to the outer edge of the highway or completely off the roadway if practicable. Wojtowicz v. Belden, 211 Minn. 461, 463, 1 N. W. (2d) 409, 410, states:

"* * * Important is the requirement that the pedestrian shall not only walk near the left side but also give way to oncoming traffic."

In Wisconsin, while its supreme court has not "interpreted" modifications into its statute as we have done, the supreme court of that state in Panzer v. Hesse, 249 Wis. 340, 346, 24 N. W. (2d) 613, 616, said of a similar statute:

"* * * *The statute is a very important safety measure. It is designed to compel a pedestrian to face the traffic most likely to en-*

*danger him, thus increasing his opportunities for lookout and the likelihood. that approaching traffic will be seen and avoided."* (Italics supplied.)

In speaking of a pedestrian on the wrong side of the highway, that court said in the same case (249 Wis. 347, 24 N. W. [2d] 616):

"* * * Plaintiff was walking on the wrong side of the highway. He took no observation to the rear and he was struck. As a matter of law, he was negligent, both as to lookout and position on the highway, and at least in combination these defaults were causal."

Plaintiff here was prima facie guilty of negligence in using the right side of the roadway just before he was hit. He could only rebut the prima facie case against him by presenting some justification for being on the wrong side. Failing in that, he was conclusively negligent. Wojtowicz v. Belden, 211 Minn. 461-463, 1 N. W. (2d) 409-410. Even if there was a justifiable reason for not walking on the left side, as the majority hold, the rest of the statute was still in force, and plaintiff was required, in the interest of his own safety, to give way to traffic on the side on which he was walking. To do so, he would have had to be alert to its approach. Ordinary care on his part would require a degree of vigilance commensurate with the peril of walking in a lane where traffic was approaching from behind him—a degree of care that would be an adequate substitute for his failure to be facing approaching traffic. In Maine, where apparently they have no statute or had none in 1948, the supreme court of that state said in Barlow v. Lowery, 143 Me. 214, 218, 59 A. (2d) 702, 705:

"* * * Ordinary care may sometimes require that he walk on the left-hand side, in order to better see and avoid approaching cars. He must indeed be vigilant for his own safety when he is walking on, or even too near, the right-hand travelled portion of a way with his back to oncoming vehicles."

Realizing the requirement of care commensurate with the peril, how can we excuse or justify plaintiff for not looking to see defendant's car when defendant announced his approach from plaintiff's

rear before plaintiff stepped in front of defendant's car? This was not "giving way" to oncoming traffic, but was a clear violation of that part of the statute which still applied to him while on the right side of the highway. The only possible compliance with the statute would have been to walk as far as possible to the right when he became aware of defendant's approach. This he did not do. As quoted in the majority opinion, he said, when asked what he did on hearing defendant's horn:

"Well, I can't tell you that, either. I suppose I tried to get across, maybe I stepped up, and that's the time he hit me, see?

&ast; &ast; &ast; &ast; &ast;

"* * * I stepped out going to try to go across."

Defendant might well have swung to the left, as he was attempting to do, and passed plaintiff, if plaintiff had but looked before he tried "to go across," or even if he had stepped to the right as far as possible. No circumstance could better illustrate the wisdom of the old adage to "look before you leap" than the one at bar. Defendant, out of an abundance of caution, sounded his horn to let plaintiff know of his approach so that plaintiff might move to the edge of the pavement in compliance with the statute.

In my opinion, reasonable minds functioning judicially could not find plaintiff in the exercise of ordinary care when he failed to look back, in response to defendant's announcement of his approach, and when instead he stepped blindly to the left and toward the middle of the road. Had he followed the requirement of the statute or the dictates of common sense, he would not have been hurt.

Almost universally, if a pedestrian continues to do just what he is doing upon the approach of a vehicle, the driver will avoid hitting him. Making a sudden movement in changing course is the most dangerous thing a pedestrian can do, unless he first looks to see if such movement can be made in safety. Here, being on the right-hand side of the road, it was his duty to be on the alert for the approach of traffic from the rear and to give way to it by stepping to the right. He did not do so, but, without looking, jumped in front

of it. In my view, he was negligent as a matter of law, and that negligence was, in reality, the sole cause of his injury.

Certainly, plaintiff should not be accorded any relaxation of ordinary care because of his age. If on that account his movements were more leisurely, his vigilance should have been the greater.