GEORGE G. SMITH AND ANOTHER v.
ALEXANDER C. REKUCKI.

177 N. W. (2d) 410.

May 8, 1970—No. 41978.

*Anderson & Christopherson* and *Charles W. Anderson,* for appellants.

*King, MacGregor & Lommen, John P. Lommen,* and *Phillip A. Cole,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Theodore B. Knudson, JJ.

NELSON, JUSTICE.

Appeal from an order of the District Court of Hennepin County denying plaintiffs' motion for a new trial on the issue of damages or, in the alternative, a new trial on all issues.

The case involves a personal injury suit instituted by George G. Smith and Delores C. Smith, his wife, plaintiffs-appellants, against Alexander C. Rekucki, defendant-respondent. The case was tried before a jury which returned a verdict in favor of plaintiff George Smith in the sum of $4,100 and in favor of plaintiff Delores Smith in the sum of $1,000 on February 3, 1969.

The case arose out of an automobile accident occurring on August 25, 1965, on Nicollet Avenue in the city of Minneapolis. Mrs. Smith was traveling north, as was defendant, when he collided with the rear end of plaintiffs' automobile. Mrs. Smith's approximate speed was 15 to 25 miles per hour and that of the defendant approximately 15 miles per hour. She testified that she stopped her vehicle to avoid another automobile which had entered her lane, at which time her automobile was struck by that of defendant.

Defendant described the damage to his automobile as a slight dent on the left side of the center of the car and the front end of the bumper. Plaintiff George Smith described the damage to his vehicle as "very slight" consisting of a dented bumper guard and a dented frame on the rear right.

Mrs. Smith received medical attention at a hospital following the accident. Two days later she consulted Dr. Louis Filiatrault,

complaining of neck pain, blurred vision, and headaches. She was hospitalized until September 16, 1965, continued to receive treatment for several months, and was again hospitalized from February 27 to March 7, 1966. In October 1968 she was involved in a second accident in which another automobile hit her parked car and jarred her while she was seated therein. She testified that this accident caused a flare-up in her symptoms. Following this accident she went back to Dr. Filiatrault, who subsequently placed her in the hospital again. At the time of trial she still complained of back pain and headaches.

Plaintiffs contend that as a result of the accident of August 25, 1965, they incurred medical expenses in the sum of $4,093.73 and loss of Mrs. Smith's wages from the time of the accident.

Dr. Filiatrault testified that he diagnosed a cervical myofacial strain, nerve rootlet injury, and "conversion reaction," all of which were directly related to the accident of August 25, 1965, and that at the time of the trial Mrs. Smith had a permanent problem relating to the conversion reaction. The doctor also testified that when she visited him on December 6, 1968, she was not, in his opinion, having any problem with symptoms from cervical myofacial strain or nerve rootlet injury, but that her "primary problem was a conversion reaction" related to her accident of October 1968. He then testified that in his opinion Mrs. Smith would have a problem with conversion reaction which could be permanent unless she received psychotherapy. Dr. Filiatrault also indicated that in the October 1968 accident Mrs. Smith may have sustained a small physical injury sufficient to "reprecipitate her conversion reaction, the same conversion reaction" that originated with the August 1965 accident.

The record indicates that in February 1966 Dr. Filiatrault called in a neurologist, Dr. C. Camak Baker, to examine Mrs. Smith. Neither Dr. Baker, nor Dr. R. D. Granquist, called in as an orthopedic consultant, found any suggestion of nerve root involvement. In addition, Dr. Filiatrault conceded that the various reports and hospital records containing his conclusions concern-

ing Mrs. Smith's condition did not indicate nerve rootlet injury as part of his diagnosis.

The report of Dr. George C. Dorsey, Jr., a consulting psychiatrist who had been called into the case by Dr. Filiatrault, was also read during Dr. Filiatrault's direct examination. Dr. Dorsey's report singled out Mrs. Smith's problem as a conversion reaction. Although Dr. Dorsey did not mention the accident as causative or noncausative, he explained in some detail how Mrs. Smith's emotional condition was rooted in her childhood experiences and tied her reactions in with present assistance from members of her family.

Dr. James A. Moriarty, a specialist in neurology and psychiatry to whom Dr. Filiatrault referred Mrs. Smith, testified that she had sustained nerve rootlet injury and a "depressive reaction" related to the 1965 accident, but that her "conversion reaction" was not related to that accident. Dr. Moriarty further testified that unless "something else is done about it," the nerve rootlet irritation is permanent. He testified that he had treated Mrs. Smith to some extent for the nonrelated conversion reaction problem.

Dr. Andrew Leemhuis, a specialist in neurology and psychiatry testifying in behalf of defendant at the trial, stated that he found no evidence of nerve rootlet injury but said that Mrs. Smith had possibly suffered a mild strain of the cervical spine as a result of the accident. It was his opinion that "organically" Mrs. Smith was "all right" but that she was suffering from "psychosomatic symptoms as a result of functional factors within herself and the litigation." He believed that the functional complaints would clear up once the litigation was settled, and Mrs. Smith would thereupon return to her "previous state."

The issues on this appeal involve the adequacy of the award of damages and the trial judge's refusal to instruct on plaintiff husband's claim for future loss of services.

It is hardly necessary to dwell further on the medical testimony, conflicts in which had to be resolved by the jury as a fact-

finding body. The evidence on damages must be evaluated in the light most favorable to defendant, with all conflicts resolved in his favor. Based upon the testimony as a whole, we think that the jury's award of $1,000 to Mrs. Smith for general damages and loss of wages cannot be viewed as unreasonable or as a result of passion and prejudice, and the trial court's instructions that she could recover only for injuries caused by the accident were proper.

■ The instant case is replete with medical, neurological, and psychiatric expert testimony. The general rule applicable to expert testimony is that the function of experts is to assist the jury in reaching a correct conclusion from the facts in evidence. The opinions of experts are not ordinarily conclusive on the jury but are items of evidence to be considered along with the other evidence in the case. This court follows the modern tendency to make no distinction between evidential and ultimate facts subject to expert opinion. Piche v. Halvorson, 199 Minn. 526, 272 N. W. 591; State v. Cox, 172 Minn. 226, 215 N. W. 189.

It is well recognized that every expert opinion rests on an assumption of fact. If the opinion is given upon a hypothetical question, its weight depends wholly on the jury's finding that the assumed facts have been proved. If it is based upon the expert's own testimony as to the facts, the truth of this testimony is no less open to their belief or disbelief. Therefore, the soundness of the opinion itself is to be determined by the jury's consideration of factors such as its apparent reasonableness, their confidence in the skill and trustworthiness of the witness, and any contradiction from other experts. See, 31 Am. Jur. (2d) Expert and Opinion Evidence, § 181.

■ While the questions as to the cause, character, and extent of Mrs. Smith's injuries and as to the factors to be considered in arriving at a reasonably correct prognosis seem to be highly scientific, yet, as pointed out by this court in Kundiger v. Metropolitan Life Ins. Co. 218 Minn. 273, 282, 15 N. W. (2d) 487, 493, the jury is still the tribunal to which questions of this kind are

submitted for determination. See, James v. Chicago, St. P. M. & O. Ry. Co. 218 Minn. 333, 337, 16 N. W. (2d) 188, 191.

In view of the testimony as to the two accidents and the conflict in the expert testimony, the jury was not bound under the evidence to conclude that the injuries received in the accident of August 25, 1965, caused all the disabilities for which Mrs. Smith was treated between that date and the time of the trial.

■ The court in its charge made it quite clear to the jury that if they found defendant to have been negligent, Mrs. Smith would be "entitled to recover for any pain, disability or emotional distress experienced by reason of her injuries." It was, of course, for the jury to determine from all the evidence the amount she should be compensated for such pain and suffering.

Where the evidence would support a finding that any pain or suffering could have been caused by conditions not traumatic or not connected with any accident referred to herein; where the evidence would support a finding that Mrs. Smith's loss of wages was due to other causes rather than to the accident; and where the evidence established that her attending physician had advised her to return to work, but she refused, the verdict of $1,000 rendered in her favor was not so inadequate as to require a new trial.

■ Plaintiffs also contend that the award of $4,100 to George Smith for his claim for medical expenses and loss of his wife's services was inadequate. It was shown by stipulation that George's medical expenses for the care of his wife at the time of trial amounted to $4,093.73. However, the causal relationship of these expenses to the accident was not stipulated but left to the jury. Thus the medical expenses were not a conclusive measure of the severity of Mrs. Smith's injuries.

While the fact that the medical care was rendered was not in dispute, the record indicates that very little of the treatment was for the conversion reaction, apparently leaving the greater share of the medical bill to be applied for the minor physical injury resulting from the accident of August 25, 1965.

Plaintiffs have cited Hurr v. Johnston, 242 Minn. 329, 65 N. W. (2d) 193, as sustaining their position that the verdicts rendered in the instant case were entirely inadequate. In the Hurr case the total verdicts were less than the clearly proved or stipulated damages and therefore practically nominal. Furthermore, the record gave rise to a strong inference that the jury had compromised between the question of the right of recovery and the amount of damages and that therefore neither plaintiffs nor defendant had been afforded their fair day in court.

In the instant case the verdicts clearly compensated plaintiffs for their special damages. Where, as here, the evidence is of such a character that it might well leave some doubt regarding the extent of the physical injuries complained of and the verdict returned is not a nominal one, this court will not ordinarily interfere with the trial court's exercise of its discretion in denying a new trial. But when the award of damages is manifestly and entirely inadequate, and in addition thereto it fairly appears that it was made as a compromise between the right of recovery and the amount of damages sustained, a new trial will ordinarily be granted.

In Souden v. Johnson, 277 Minn. 87, 151 N. W. (2d) 767, this court held that even though defendants' liability for a collision was established, the jury was justified in finding no causal relationship between the accident and the injuries claimed by plaintiff. In Tibbetts v. Nyberg, 276 Minn. 431, 150 N. W. (2d) 687, this court held that a new trial will not be ordered where the evidence justifies a finding that plaintiff's disabilities were of psychosomatic origin and were not proximately caused by the accident.

■ It is the general rule in this state that the question of whether a verdict is adequate is addressed in the first instance to the sound discretion of the trial court, and its action will not be reversed on appeal except for a clear abuse of discretion. Mohr v. Williams, 95 Minn. 261, 104 N. W. 12, 1 L. R. A. (N. S.)

439; Litman v. Walso, 211 Minn. 398, 1 N. W. (2d) 391; Berg v. Ullevig, 244 Minn. 390, 70 N. W. (2d) 133.

New trials have been ordered on appeal where on the record the damages awarded appeared to be entirely inadequate. Flaugh v. Egan Chevrolet, Inc. 202 Minn. 615, 279 N. W. 582; Olson v. Christiansen, 230 Minn. 198, 41 N. W. (2d) 248; Seydel v. Reuber, 254 Minn. 168, 94 N. W. (2d) 265. However, we are unable to say from the evidence in the case at bar that either of the verdicts was given under the influence of passion or prejudice or is so inadequate as to make the denial of a new trial a clear abuse of discretion on the part of the trial court.

■ Plaintiffs complain of the trial court's rejection of the requested instruction on the husband's claim of future loss of services. The fact is, the record contradicts such a claim. The report of Dr. Dorsey, introduced and read during Dr. Filiatrault's direct testimony, prescribed as proper treatment for Mrs. Smith that she return to performance of her normal household chores and duties. Also, George Smith testified he had been advised by his wife's doctors that the family should withdraw their help from his wife and see that she did her own household work. Under the circumstances, there was in fact no evidence of lost services, society, and companionship, either up to time of trial or in the future.

Furthermore, the testimony of plaintiffs' doctors concerning the permanence of Mrs. Smith's condition does not per se provide a basis for future loss of services, since the evidence must also show that future incapacity to perform ordinary household chores and services has resulted from such permanent condition. There was no evidence of this kind.

Upon the record herein, the jury would have been required to speculate as to what services would be lost in the future. See, Martin v. Schiska, 183 Minn. 256, 236 N. W. 312; Berg v. Gunderson, 275 Minn. 420, 147 N. W. (2d) 695. Under the circumstances, no claim of prejudice can be sustained by plaintiffs on this claimed instructional error. The jury rejected the claim of

permanence made by plaintiffs. Thus, any future loss of services stemming from the alleged permanent condition would likewise have been rejected. The omission of this instruction obviously had no effect on the verdict. The trial court properly rejected the instruction.

It is our conclusion that the trial court's denial of plaintiffs' motion for a new trial was a proper exercise of its discretion.

Affirmed.