# RONALD LINE v. JOSEPH ALLEN NOURIE.

215 N. W. 2d 52.

February 8, 1974—No. 44042.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, R. D. Blanchard,* and *J. Richard Bland,* for appellant. *Gerald H. Hanratty,* for respondent.

Heard before Knutson, C. J., and Kelly, Todd, and Scott, JJ., and considered and decided by the court.

TODD, JUSTICE.

Defendant, Joseph Nourie, appeals from an order denying his motion for a new trial. Plaintiff, Ronald Line, was awarded $35,000 damages, subsequently reduced by the trial court to $20,000, for injuries sustained when struck by defendant's automobile while walking on the right hand side of a highway.

Defendant had requested an instruction as to the duties of lookout of the plaintiff which the trial judge inadvertently neglected to give in his instructions to the jury and refused to give later for fear of overemphasizing the instruction. The jury found defendant 70-percent negligent and plaintiff 30-percent negligent. We reverse and remand for a new trial on the issue of liability and affirm as to the issue of damages.

Plaintiff, a young man of 18, left his place of employment on December 14, 1969, and was walking west on Minnetonka Boulevard in St. Louis Park, Minnesota. Minnetonka Boulevard is a 44-foot wide street having two lanes of traffic on each side of the centerline. On the day in question, snow had been falling, and it appears from the record that the sidewalks on each side of the street were covered with snow. Plaintiff walked on the left side of the road facing traffic for some distance, then crossed to the right side or north side of the road, and continued walking. The exact distance of his path of travel from the curbline was not clearly established in the evidence.

Defendant was a young man of 16, operating a motor vehicle belonging to his father, Elmer Joseph Nourie. He had been a

licensed driver for 5 weeks. He was traveling west on Minnetonka Boulevard. He testified that the road surface was snow-covered and slippery. The evidence establishes that he was traveling 20 to 25 miles per hour when he first saw plaintiff walking near the curb in a westerly direction. He then applied the brakes of the motor vehicle. The wheels locked and the car slid forward and to the right, striking plaintiff. Defendant testified that he sounded his horn immediately prior to the impact. Plaintiff testified that he heard the sound of the horn about the same time he was struck.

On cross-examination, defendant admitted that had he not applied his brakes and had he continued straight ahead, his car would not have struck plaintiff. He further indicated that there was no oncoming traffic which hindered or prevented him from proceeding in a straight line past the plaintiff.

Plaintiff was taken to a hospital following the accident and released after a few hours. X-rays taken at that time were negative, but he was put on crutches. The next day he was examined by Dr. Stanley Stone at the Golden Valley Clinic. He was treated by Dr. Stone on approximately eight occasions in the ensuing two months and received prescriptions for pain pills. Experiencing continued pain in the area of his shoulder blades, plaintiff began to see Dr. Daniel Glick, a chiropractor, who had treated him some years earlier for an unrelated injury. Dr. Glick testified that due to the accident, plaintiff had suffered a general spinal sprain and strain and that as a result some of the muscles had lost their ability to hold the vertebrae in place. He found that plaintiff had a great deal of discomfort in the lower part of his neck and did not have normal range of motion. In addition, he found tenderness between the shoulder blades and between the vertebrae in the midline and some disrelationship between the right and left illia and the sacrum and sacrioliac. Dr. Glick testified that the prominent producing cause of the symptoms was the accident of December 14, 1969, and rendered his opinion based on reasonable chiropractic certainty that plaintiff had a

15- to 20-percent permanent partial disability of the mid and upper thoracic spine.

Plaintiff offered no other medical testimony and waived any medical privilege he might have had as to medical reports from the Golden Valley Clinic, Dr. Stone, and from Dr. Donald Madsen, an orthopedic surgeon, to whom he had been referred by Dr. Stone. Defendant did not call any of these doctors but did introduce the medical reports as his exhibits.

At the close of the evidence, the court considered instructions requested by both parties. The court ruled as a matter of law that plaintiff was guilty of negligence for walking on the wrong side of the road in violation of Minn. St. 169.21, subd. 5.[1] The court further agreed at that time to give defendant's requested instruction dealing with a pedestrian's duty to maintain proper lookout. Defendant's requests for instructions on assumption of risk and duty to yield the right-of-way were denied because the court had directed that plaintiff was negligent as a matter of law for walking on the wrong side of the road.

In the course of his instructions, though instructing as to the duties of the defendant operator of a motor vehicle to maintain proper lookout, the court inadvertently failed to instruct as to the duty of a pedestrian to maintain proper lookout. At the close of the instructions, in response to the request of the court for additions or corrections, defendant specifically requested the omitted instruction. The court at this time refused to give the instruction on the ground that it would improperly emphasize that part of the case. The court in its memorandum denying defendant's motion for a new trial stated that it had inadvertently failed to give this instruction but felt that if it was error it was not sufficient error to warrant convening a new jury.

---

[1] Minn. St. 169.21, subd. 5, provides: "Pedestrians when walking along a roadway shall walk near the left side of the roadway giving way to oncoming traffic. Where sidewalks are provided and usable it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway."

■ We hold that it was reversible error to refuse to give the instruction on the duty of a pedestrian to maintain lookout as it was a proper item for the jury to consider in evaluating the comparative negligence of the parties.

The issue of comparative negligence was submitted to the jury with the instruction that plaintiff was negligent in walking on the wrong side of the road in violation of the statute. The court also instructed the jury as to the second sentence of Minn. St. 169.21, subd. 5, regarding the use of sidewalks if available. The court properly limited consideration of this provision to the issue of causation and comparative negligence since plaintiff had already been determined to be negligent as a matter of law. The instruction regarding pedestrian lookout requested by defendant would have been material as well to the issue of causation.

Having been instructed by the court that plaintiff was negligent and having determined by its own evaluation of the evidence that plaintiff's negligence was a direct cause of the accident, the jury had one remaining function, namely, to compare the negligence of plaintiff to that of defendant, whose negligence they also found to be a direct cause of the accident. In considering the matter of comparative negligence, the jury had before it only the issue of plaintiff's violation of the statute requiring pedestrians to walk on the left side of the road and to use sidewalks if available. The jury was not instructed to consider and evaluate plaintiff's duty to maintain a lookout in comparing the negligence of plaintiff to that of defendant.

The trial court in agreeing to give the instruction regarding pedestrian lookout referred to and relied upon Minnesota Jury Instruction Guides, Instruction 301, which provides in part:

"* * * The duty of reasonable care may include, among other things:

"1. The duty of every person using a public highway as a (pedestrian) (driver of a vehicle) to maintain a reasonable lookout."

The trial court gave this instruction relative to the driver of a vehicle but omitted it as to a pedestrian.

Those cases arising in Minnesota which involve a pedestrian's duty to maintain a proper lookout arise in fact situations where the pedestrian was crossing a roadway.[2] In Brodd v. Priem, 236 Minn. 148, 52 N. W. 2d 429 (1952), and Hubred v. Wagner, 217 Minn. 129, 14 N. W. 2d 115 (1944), our court had occasion to consider claims of plaintiff-pedestrians who were struck from behind while walking on the right hand side of a road in violation of Minn. St. 169.21, subd. 5. We there held that the violation constituted only prima facie evidence of negligence and that the issue of contributory negligence, under the facts, was to be decided by the jury and in neither majority decision was any duty of the pedestrian to maintain a proper lookout mentioned.

The Wisconsin court in Panzer v. Hesse, 249 Wis. 340, 24 N. W. 2d 613 (1946), had occasion to consider a pedestrian walking on the wrong side of the road and failing to maintain a lookout. The court there held (249 Wis. 346, 24 N. W. 2d 616):

"Plaintiff's failure to look to the rear not only is an independent ground of negligence, but also bears importantly, (1) upon the proximate relation of his violation of the statute to the injury; and (2) upon the degree of his negligence. A pedestrian walking backward upon the right side of the highway and maintaining a constant lookout is negligent as a matter of law as to his place on the highway, but such precautions might require a holding that the violation did not cause the injury. The more frequent the lookout, the less the negligence, or its contribution to the injury, and it is proper to take into account the width of the highway, the volume of traffic, the time of day, and other relevant factors. There is no point in this case in trying to appraise all of these matters. Plaintiff was walking on the wrong side of

---

[2] Thomas v. Mueller, 251 Minn. 470, 88 N. W. 2d 842 (1958); Swanson v. Carlson, 231 Minn. 373, 43 N. W. 2d 217 (1950); Murray v. Jacobson, 195 Minn. 153, 262 N. W. 152 (1935).

the highway. He took no observation to the rear and he was struck. As a matter of law, he was negligent, both as to lookout and position on the highway, and at least in combination these defaults were causal.

"Defendants contend that as a matter of law the negligence of plaintiff is equal to or greater than that of defendant, but we are of the view that there is no adequate measuring stick by which this court can so decide as a matter of law. This conclusion requires a reversal and a remand of the cause for a new trial."

The Wisconsin court in Vanderhei v. Carlson, 275 Wis. 300, 81 N. W. 2d 742 (1957), further commented on the failure to give an instruction regarding lookout. In remanding for a new trial, the court said (275 Wis. 303, 81 N. W. 2d 744):

"A study of the record, however, requires us to invoke our discretionary powers under sec. 251.09, Stats., and to order a new trial. The trial court instructed the jury as to the duty of a driver of an automobile to keep a proper lookout. However, when instructions were given with relation to the question about the plaintiff's lookout, the trial court merely stated, 'I have already instructed you in regard to that.' A pedestrian upon a highway, whether standing or traveling, has a duty to use his senses for his own protection. The degree of care required depends upon all of the circumstances, and defendants' rights were seriously prejudiced by the lack of adequate instructions in this case. * * *"

See, also, Taylor v. Wistey, 218 Iowa 785, 254 N. W. 50 (1934).

We adopt the reasoning of these cases and hold that plaintiff's duty to maintain a proper lookout is a separate, independent duty and is not encompassed in his duty to walk on the left side of the roadway and that the jury should properly consider the violation of this duty in comparing the negligence of plaintiff to that of defendant. In this case, the jury should have been allowed to consider three items of plaintiff's negligence in determining the degree of his negligence: (1) Walking on the wrong side of the

road; (2) failure to use the sidewalks if available; and (3) failure to maintain proper lookout. The jury was properly instructed to consider the first two of these items but was not instructed to consider the third item. We hold that the failure to submit this issue to the jury constitutes reversible error and remand the case for a new trial on the issue of liability with instructions to the jury on all three items.

■ We are mindful that Rule 59.01, Rules of Civil Procedure, provides that a new trial may be granted "on all or part of the issues." However, on remand the full scope of the issue of liability should be tried—the causative negligence of each party and comparative negligence. See, Juvland v. Mattson, 289 Minn. 365, 184 N. W. 2d 423 (1971).

■ Defendant challenges the amount of the verdict as reduced by the trial court and the qualifications of Dr. Glick, the chiropractor, to render an opinion as to permanent partial disability and future medical expenses. It appears that this court has never directly decided whether a chiropractor is competent to express expert opinion in a personal injury action as to the probable effects, duration, or future medical requirements of an injury. Many jurisdictions have held that a chiropractor is competent to testify if proper foundation has been laid and the matter is within the scope of the profession and practice of chiropractics.[3] We hold that a chiropractor can render opinions based on reasonable chiropractic certainty as to the probable effects, permanence, and future medical requirements of any injury where proper foundation for such opinion has been laid. Examination of the record in this case indicates that proper foundation was laid and the opinion was properly considered by the jury.

The question of the adequacy of a verdict is addressed in the first instance to the sound discretion of the trial court. We will not reverse its action absent a clear abuse of discretion. Smith v. Rekucki, 287 Minn. 149, 177 N. W. 2d 410 (1970). We have

---

[3] See, Annotation, 52 A. L. R. 2d 1384, and cases cited therein.

carefully reviewed the testimony regarding plaintiff's injuries and consider the verdict as reduced by the trial court to be neither excessive nor given under the influence of passion and prejudice.

The matter is remanded for new trial on the issue of liability and is affirmed as to plaintiff's damages.

Reversed in part; affirmed in part.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.